Petitioner: Enrique LOBATO,

v.

Respondents: INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Western Forge.

No. 03SC556.

Supreme Court of Colorado, En Banc.

Jan. 18, 2005.

Steven R. Waldmann, Colorado Springs, for Petitioner.

Dworkin, Chambers & Williams, P.C., David J. Dworkin, Steven G. York, Denver, for Respondent Western Forge.

Pinnacol Assurance, Brandee DeFalco Galvin, Denver, for Amicus Curiae Pinnacol Assurance.

Gordon & MacDonald, P.C., William J. MacDonald, Denver, for Amicus Curiae Workers' Compensation Education Association.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, for Amicus Curiae Steven U. Mullens.

Justice COATS dissents.

HOBBS, Justice.

We granted certiorari in this workers' compensation case to consider the effect of a 1999 amendment to the Workers' Compensation Act (Act) retroactively altering the timeline for claimants' selection of a division independent medical examiner (DIME).[1] The Administrative Law Judge (ALJ), Industrial Claim Appeals Office (ICAO), and the Director of the Division of Workers' Compensation (Director) issued three separate interpretations of how the 1999 amendment applies to cases like that of petitioner Enrique Lobato, where a final admission of liability (FAL) that gave no notice of the new time limit was received before the 1999 amendment came into effect.

We reverse the court of appeals' judgment and hold that Division Rule IV(L)(3), 7 Colo. Code of Regs. section 1101-3 (2004),[2] correctly effectuates the intent of the legislature. To implement the General Assembly's dual policies of ensuring administrative notice to claimants of procedural requirements and expediting the resolution of existing workers' compensation claims, we hold that Lobato, whose injury occurred after July 1, 1991 and before August 5, 1998, and whose FAL was filed before September 1, 1999, had no time limit to select a DIME because he did not receive notice of the change in the timeline. Therefore, the ALJ erred in striking the DIME as untimely, and the ICAO and the court of appeals erred in upholding the order. We reverse the court of appeals' judgment and remand with directions to reinstate

---

1. We granted certiorari on the following issue: Whether the court of appeals correctly interpreted section 8-42-107.2, 3 C.R.S. (2003), as requiring that a claimant with a final admission of liability filed before the effective date of the statute request an independent medical examiner within thirty days of the effective date of the statute, and rejecting an alternative interpretation by the Director of the Division of Workers' Compensation ultimately reflected in Rule IV(L), 7 CCR 1101-3 (2002)?

2. This opinion refers to events occurring over a span of thirteen years. Changes to statutes and rules are, at times, critical to the analysis. For the sake of convenience, the current versions of statutes and rules are cited where there have been no relevant changes or the citation is general. Where the specific codification of a statute or rule is important, the particular version is cited.

Lobato's claim and DIME report and to return this case to the ALJ for further proceedings consistent with this opinion.

I.

On December 28, 1992, petitioner Lobato injured his back in the course of his work for Western Forge. In August, 1993, Lobato's primary physician examined him and reported that he had reached maximum medical improvement (MMI) for his work-related injury and had no lasting impairment.

Western Forge filed its FAL on March 25, 1994, pursuant to section 8-43-203(2)(b)(II), 3 C.R.S. (1994). In its FAL, Western Forge denied further liability, stating that Lobato was not medically impaired or entitled to continuing benefits. The FAL was printed on the 1991 revised version of Workers' Compensation Form 4, provided by the Division of Workers' Compensation, and included the following notice:

**NOTICE TO CLAIMANT:** This is the Final Admission by the insurance carrier or self-insured employer in your case. If you disagree with the amount or type of benefits which the carrier or self-insured employer has agreed to pay, you must write a letter to the Division of Workers' Compensation, 1120 Lincoln, 14th Floor, Denver, Colorado 80203, stating that you object to this admission of liability. Please send a copy to the insurance carrier or self-insured employer. **If you do not notify the division in writing that you object to this final admission within sixty (60) days of the date of the admission, your case will automatically be closed as to the issues admitted in the final admission.**

(emphasis in original). Lobato timely filed an objection to the FAL pursuant to the notice provision, stating that he had not reached MMI, but if he had, that he was

suffering a permanent disability. Lobato took no further action on this issue.

After his original injury, Lobato was transferred to a different job at Western Forge and continued his employment. On July 6, 1995, Lobato injured his back while at home in the evening. Lobato filed a workers' compensation claim, alleging that his 1995 injury was an aggravation of the 1992 injury and that he was suffering an occupational disease originating from the earlier injury.

During the pendency of Lobato's claim, the General Assembly made two amendments to the Workers' Compensation Act. In 1998, the legislature enacted H.B. 98-1062 (1998 amendment), which added a section defining the procedure for the selection of DIMEs. Ch. 313, § 8-42-107.2, 1998 Colo. Sess. Laws 1427. This new section required that claimants select their DIMEs within thirty days of the filing of the FAL. *Id.* at 1428.

In 1999, the General Assembly enacted H.B. 99-1049 (1999 amendment), which made the thirty-day time limit applicable to "all open cases with a date of injury on or after July 1, 1991 for which a division independent medical examiner has not been selected." Ch. 86, § 8-42-107.2, 1999 Colo. Sess. Laws 254. This provision came into effect on September 1, 1999. *Id.* at 255.

The Director considered the application of the amendments to cases such as Lobato's, where FALs were filed before the 1999 amendment. In 1999, after consultation with the Attorney General, the Director published her interpretation that a separate triggering event, aside from the enactment of the amendment, is required to start the thirty-day time limit running.[3] This interpretation was promulgated as Rule IV(L)(3).

On October 31, 2000, the ALJ found that Lobato had not met his burden of showing that he was suffering an occupational disease stemming from his original injury and dismissed his claim. Dissatisfied with the

---

3. "[I]t is my opinion, after consultation with the Attorney General's Office, that HB 99-1049 should not be interpreted as requiring the described individuals to commence the [D]IME process by filing an application by September 30, 1999. The terms of HB 99-1049 clearly reflect that there must be a triggering event, a new or revised Final Admission, or a medical report, before the 30-day time period to request a ... [D]IME begins to run." Mary Ann Whiteside, "HB 99-1049, Selection of an Independent Medical Examiner," *All About Claims*, Nov. 1999 at 2.

ALJ's finding and continuing to assert that his 1992 injury was the cause of his 1995 medical problems, Lobato filed a Notice and Proposal to Select a DIME on November 30, 2000. On January 3, 2001, Lobato applied for a DIME.

On January 30, 2001, Western Forge moved to strike Lobato's application as untimely under the 1999 amendment. Nonetheless, the DIME was completed by Dr. Michael Sparr. On March 7, 2001, Sparr reported that Lobato was suffering from a fifteen percent whole person impairment that was not the result of any pre-existing condition. On September 25, 2001, after an evidentiary hearing, the ALJ granted Western Forge's motion to strike the DIME report from the record. The ALJ concluded that Lobato had lost his opportunity to dispute the MMI and non-impairment determination by failing to comply with the thirty-day time limit of the 1999 amendment.

Lobato petitioned for review of the ALJ's decision, and the matter came before the ICAO. On May 22, 2002, the ICAO affirmed the ALJ's dismissal of the claim, concluding that the 1999 amendment required claimants to select DIMEs within thirty days of the filing of the FAL, regardless of when the FAL was filed. Panelist Halsey specially concurred on the basis that the September 1 effective date of the 1999 amendment was the triggering event that started Lobato's thirty-day period for selection of a DIME. Because Lobato had not met her proposed September 30 deadline for selection, Halsey joined in affirming the dismissal.

Lobato appealed the ICAO ruling to the court of appeals. Writing one year after the Director had promulgated Rule IV(L)(3), the court of appeals affirmed the ICAO. But the court rejected the reasoning of the majority panelists and adopted Halsey's view that the effective date of the 1999 amendment was the triggering event for Lobato's thirty-day period. The court affirmed the ICAO ruling because Lobato had not met the September 30, 1999 deadline.

Lobato petitioned this Court for certiorari review of the court of appeals' judgment.

## II.

■ We reverse the court of appeals' judgment and hold that Division Rule IV(L)(3), 7 Colo.Code of Regs. section 1101–3 (2004), correctly effectuates the intent of the legislature. To implement the General Assembly's dual policies of ensuring administrative notice to claimants of procedural requirements and expediting the resolution of existing workers' compensation claims, we hold that Lobato, whose injury occurred after July 1, 1991 and before August 5, 1998, and whose FAL was filed before September 1, 1999, had no time limit to select a DIME because he did not receive notice of the change in the timeline. Therefore, the ALJ erred in striking the DIME as untimely, and the ICAO and the court of appeals erred in upholding the order. We remand this case to the court of appeals to reinstate the claim and DIME report and instruct the ALJ to conduct further proceedings consistent with this opinion.

### A. Standard of Review and Statutory Construction

■ We review the proper construction of statutes de novo; in doing so, we accord deference to the agency's interpretation of its statute, but we are not bound by it. *Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 326 (Colo.2004). When the agency interpretation is not uniform or consistent, we do not extend deference and will look to other statutory construction aids. *Colo. Common Cause v. Meyer*, 758 P.2d 153, 159 (Colo.1988); *see also United States v. Healey*, 160 U.S. 136, 148–49, 16 S.Ct. 247, 40 L.Ed. 369 (1895)(construing effect of amendment on existing cases de novo where subsequent Secretaries of the Interior offered different interpretations).

■ Our objective is to effectuate the intent and purpose of the General Assembly. *Anderson*, 102 P.3d at 326; *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004). If the statutory language is clear, we apply the plain and ordinary meaning of the provision. *Anderson*, 102 P.3d at 326; *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002). If the statute is reasonably susceptible to different interpretations, we

determine the proper interpretation by examining the legislative goals underlying the provision, the circumstances under which it was adopted, and the consequences of possible alternative constructions. *See Anderson,* 102 P.3d at 326; *Bd. of Educ. v. Booth,* 984 P.2d 639, 652 (Colo.1999); § 2–4–203(1), C.R.S. (2004). We also look to the statute's declaration of purpose and legislative history. *See Anderson,* 102 P.3d at 326; *Mountain City Meat Co. v. Oqueda,* 919 P.2d 246, 252 (Colo.1996). If statutory provisions are in conflict, we will adopt the interpretation that best harmonizes the provisions if possible. *See Anderson,* 102 P.3d at 326.

### B. Selection of DIMEs

To put the DIME remedy in context, we first review the process by which injured employees pursue medical benefits under the Act; then, we turn to the 1998 and 1999 amendments at issue in the case before us.

Following a workplace injury, the employer or insurer selects an authorized treating physician who examines the employee. § 8–42–107(8)(b), C.R.S. (2004). The authorized treating physician determines the date on which the employee reaches MMI and the degree of any lasting impairment due to the injury. § 8–42–107(8)(b)(I),(c). The employer or insurer files an FAL which states the degree of its admitted liability related to the date of MMI and the impairment rating. § 8–43–203(1)(a).

When an FAL is filed and a compensable injury is shown, an employee is entitled to temporary total disability (TTD) and medical treatment benefits to help recoup lost wages or earning capacity and pay for necessary treatment. *See* §§ 8–42–101(1)(a), 8–42–105. TTD benefits automatically terminate when the authorized treating physician determines that the employee has reached MMI. § 8–42–105(3)(a). Permanent medical impairment benefits are measured by the degree of lasting impairment as determined by the authorized treating physician. *See* § 8–42–107(8)(d).

The employee may file an objection to the FAL. § 8–43–203(2)(b)(II). The only way for an injured worker to challenge the treating physician's findings of MMI and impairment

is to apply for and select a DIME. § 8–42–107(8)(b)(II), (c). The employer or insurer may file an amended FAL based on the findings of the DIME or may request a hearing to contest the findings; they can be overturned by clear and convincing evidence. §§ 8–43–107.2(4), 8–43–107(8)(c).

Until 1998, there was no time limit for the selection of DIMEs. However, the 1998 amendment modified the DIME procedures by adding a time limit. Ch. 313, § 8–42–107.2, 1998 Colo. Sess. Laws 1427.

The 1998 amendment added section 8–42–107.2, "Selection of independent medical examiner—procedure—time." *Id.* The amendment gave claimants thirty days after the FAL was filed to request a DIME. *Id.* at 1428. If the claimant missed the thirty-day window, the authorized treating physician's determinations were binding on all parties. *Id.* The amendment required that the notice provision in the FAL form include the new time limit for selecting DIMEs. *Id.* at 1431. The 1998 amendment was expressly applicable only to cases of injuries occurring on or after its effective date of August 5, 1998. *Id.* at 1432.

In 1999, the General Assembly amended the Act again with H.B. 99–1049. Ch. 86, § 8–42–107.2, 1999 Colo. Sess. Laws 254. Among other changes, the 1999 amendment retroactively applied the 1998 DIME process to open cases through subsection six, which reads in its entirety:

> This section was enacted by House Bill 98–1062, as enacted at the second regular session of the sixty-first general assembly, as a remedial statute and is procedural in nature. The purpose of this section is to improve and simplify remedies already existing for the enforcement of rights and the redress of injuries under the workers' compensation laws of Colorado. *This section effected (sic) the procedures related to the selection of an IME* and *shall be applicable to all open cases with a date of injury on or after July 1, 1991,* for which a division IME has not been requested, pursuant to section 8–42–107.

*Id.* at 254–55 (emphasis added).

We now continue with our statutory construction analysis.

## C. Section 8–43–107.2(6) is Ambiguous with Regard to the Section's Application to Cases with Pre–Amendment FALs

The language of the 1999 amendment states that the requirements of the section apply to "open cases" in which the injury occurred on or after July 1, 1991. However, the amendment is silent on its application to cases like Lobato's, where an FAL giving no notice of the time period for selecting a DIME was received long before the 1998 and 1999 amendments were proposed and no subsequent revised notice was provided.

■ A statute is ambiguous if it is "reasonably susceptible to different interpretations." *Booth*, 984 P.2d at 652. In this case, officials of the agency charged with administration of the Act have offered three irreconcilable interpretations.

In the first interpretation, the Director found that a triggering event was required to start the thirty-day period. The Director was concerned that any other interpretation would not meet the legislature's goal of improving and simplifying the DIME process and that due process concerns would arise if claimants were not notified of the new time limit imposed on them. Emphasizing the notice problem, the Director stated that her interpretation would require adequate notice of the revised DIME process to claimants:

> Any interpretation which would require individuals with 'post 218, pre 1062' injuries to commence the [D]IME process within 30 days of September 1, 1999, would not 'improve or simplify' the [D]IME procedures; rather, it would greatly complicate the process. *Further, the problem of lack of notice to claimants would present due process concerns.*

Mary Ann Whiteside, "HB 99–1049, Selection of an Independent Medical Examiner," *All About Claims*, November, 1999 at 2 (emphasis added).

On June 11, 2002, the Executive Director of the Department of Labor and Employment issued an order staying the ICAO final order in this case for thirty days to extend the time in which Lobato could appeal the ICAO decision. Addressing the notice issue, the Executive Director stated in the order that:

the ICAO's holding in this case can be seen as precluding a number of claimant's (sic) from obtaining a[ ][D]IME. Thus, *it raises the same due process concerns* that were present in the Smith case [in which a provision requiring claimants to pay for DIMEs was challenged because it precluded indigent claimants from receiving a DIME].

(emphasis added). This stay order was later rescinded after the ICAO issued a corrected opinion extending the time for appeal.

The Director's interpretation, as endorsed by the Attorney General and implicitly supported by the Executive Director, was later promulgated as Rule IV(L)(3):

> This subsection applies to claimants with an open claim with dates of injury on or after July 1, 1991 and before August 5, 1998 with the most recent and valid Final Admission of Liability filed before September 1, 1999 to which a timely objection was filed by the claimant but no Division independent medical examination was held before September 1, 1999. *The carrier, self-insured employer, or non-insured employer may file an amended Final Admission of Liability providing notice to the claimant of the requirement to mail a notice and proposal to select an independent medical examiner per C.R.S. section 8–42–107.2.* Failure to provide such notice by amended Final Admission of Liability as indicated in this subsection shall preclude the carrier, self-insured employer or non-insured employer from asserting that the claimant failed to timely file a notice and proposal to select an independent medical examiner per C.R.S. section 8–42–107.2. If the notice is provided by amended Final Admission of Liability the carrier, self-insured employer or non-insured employer is not precluded from subsequently raising any relevant equitable argument, such as waiver, laches or estoppel, regarding whether the notice and proposal was timely filed.

(emphasis added).

In the second interpretation, the ALJ and two ICAO panelists were persuaded that Lobato had thirty days from the filing of the FAL in his case to select a DIME, even though the FAL was filed several years be-

fore the time limit was enacted. The ALJ ascertained no requirement in the 1999 amendment for a triggering event separate from the filing of the FAL. The ICAO majority panelists rejected Lobato's claim that the amendment could not be applied to him because it was impossible for him to comply with the provision. The panelists relied on *Vetten v. Industrial Claim Appeals Office*, 986 P.2d 983 (Colo.App.1999), which held that a petition to reopen an injury claim was governed by a statute of limitations enacted after the petition was filed because the time limitation was procedural or remedial in nature. *See, e.g., Cont'l Title Co. v. Dist. Court,* 645 P.2d 1310, 1315 (Colo.1982)("application of a statute to a subsisting claim for relief does not violate the prohibition of retroactive legislation where the statute effects a change that is only procedural or remedial in nature"). The court noted that the 1999 amendment expressly stated that the DIME section is procedural and remedial in nature. Finally, the panelists found no legislative intent to provide a safe harbor for claimants with pre-amendment FALs.

The third interpretation was offered by the concurring ICAO panelist, Halsey, who considered the 1999 amendment ambiguous with regard to this case and concluded that Lobato had thirty days from the effective date of the 1999 amendment to select a DIME. The court of appeals adopted this position.

Based on three conflicting interpretations of the same provision by agency officials, we conclude that the 1999 amendment is ambiguous with regard to claimants in Lobato's position. The question before us in this case concerns only the proper application of this amendment to cases in which the injury occurred on or after July 1, 1991 and before August 5, 1998; the FAL was filed before September 1, 1999; and the claimant, like Lobato, has received no subsequent, revised administrative notice.

**D. The General Assembly Intended for Workers' Compensation Claimants to Receive Correct Procedural Notice and Intended the 1999 Amendment to Expedite the Processing of Existing Claims**

Because section 8–43–107.2 is ambiguous with regard to its application to these cases,

we look to the statutory design. It demonstrates a legislative intent to ensure that claimants receive timely and accurate administrative notice of their procedural rights. The legislative history of the 1999 amendment shows a second intent to move existing claims through the system effectively and expeditiously. These being the two purposes of the statute applicable to the case before us, we give effect to both.

Section 8–43–203(2)(b)(II), C.R.S. (2004), governs the content of the insurer's or employer's FAL. The statute requires adequate notice to the claimant of procedural requirements:

> An admission of liability for final payment of compensation *shall include* a statement that this is the final admission by the workers' compensation insurance carrier in the case, *that the claimant may contest this admission* if the claimant feels entitled to more compensation, *to whom the claimant should provide written objection,* and *notice to the claimant* that the case will be automatically closed as to the issues admitted in the final admission if the claimant does not, *within thirty days after the date of the final admission, contest the final admission in writing and request a hearing* on any disputed issues that are ripe for hearing, *including the selection of an independent medical examiner* pursuant to section 8–42–107.2 if an independent medical examination has not already been conducted.

(emphasis added). The statute demonstrates that an important function of the FAL is to provide notice to claimants of their procedural rights and limitations on those rights. The statute in effect in 1994 when Western Forge filed the FAL in this case provided for the same procedures except that the objection timeline was sixty days and there was no reference to the selection of a DIME. § 8–43–203(2)(b)(II), 3 C.R.S. (1994).

In conformance with the statute, the Workers' Compensation Form for Final Admissions of Liability prepared by the Division conspicuously provides procedural notice

to claimants. The FAL Lobato received was printed on the Division's 1991 form and tracked the statute as it existed at that time.

The 2003 revised form currently available on the Division website puts the notice portion at the top of the form, all in bold type, and clearly includes the changes wrought by the 1999 amendment:

> **If you disagree with the benefits admitted or not admitted you must do the following:**
>
> **1. Within 30 days, complete the attached objection form or write a letter to the Division of Workers' Compensation, 1515 Arapahoe St., Denver, CO 80202–2117 with a copy to the insurance carrier or self-insured employer stating that you object to this admission. You must also file an application for hearing with the Division of Administrative Hearings on any disputed issues.**
>
> **2. Within the same 30 days, if you disagree with the date of MMI or whole person impairment rating, complete the attached Notice and Proposal to Select an Independent Medical Examiner form and send it to the insurance carrier or self-insured employer and the Division.**
>
> **3. If an IME is requested, you are not required to file an application for hearing until after the IME is completed.**
>
> **4. If your date of injury is prior to July 1, 1991, the provisions regarding an Independent Medical Examiner do not apply.[4]**

Thus, the statute shows that the General Assembly intended for workers' compensation claimants to receive an FAL with accurate notice provided by employers or insurers. The Director and Division have consistently taken administrative steps to implement this legislative purpose.

The hearings on the 1999 amendment in both the House and Senate demonstrate a second important legislative concern for clearing and expediting the high number of workers' compensation claims existing at the time. For example, the bill's sponsor, Representative Paschall, told the House Business Affairs and Labor Committee that the bill aimed "to get cases off the books by streamlining" and clarifying the process for selection of DIMEs.[5] Representative Paschall also testified that, at the time of the hearing, cases to which the 1998 amendment timeline was not applicable were languishing in the system. Furthermore, the Senate sponsor, Senator Arnold, told the Senate State, Military and Veterans' Affairs Committee that the bill aimed to "cure a flaw" in workers' compensation law which allowed cases to remain in limbo if no DIME was selected.[6] When committee members asked why the retroactivity provision was added, John Berry of the Workers' Compensation Coalition answered that the parties to the bill negotiations were "trying to get more cases under the [1998 amendment] procedure."

Accordingly, we are faced with two potentially conflicting General Assembly intentions: 1) adequate administrative procedural notice to claimants; and 2) retroactivity of the 1999 amendment in order to streamline procedures for as many workers' compensation cases as possible. Because we are required to harmonize conflicting provisions of a statute if possible, see *Anderson*, 102 P.3d at 326, we conclude that the procedure outlined in Rule IV(L)(3) properly effectuates the policies of the General Assembly.

### E. The Procedure Promulgated in Division Rule IV(L)(3) Harmonizes Potentially Conflicting Legislative Directives

The ALJ's, ICAO's and court of appeals' interpretations of the 1999 amendment in

---

**4.** This form is available on the Division's website: http://www.coworkforce.com/DWC/Fillable_FormsWord/wc004final_admission.doc.

**5.** *Hearing on H.B. 99–1049 Before House Comm. on Business Affairs and Labor*, 62d Gen. Assem., 1st Sess. (January 26, 1999). Audiotape maintained by Colorado State Archives.

**6.** *Hearing on H.B. 99–1049 Before the Senate Comm. on State, Military and Veterans' Affairs*, 62d Gen. Assem., 1st Sess. (February 17, 1999). Audiotape maintained by Colorado State Archives.

this case effectuate the General Assembly's intent to make the 1998 amendment procedure retroactive to open cases and to expedite the resolution of open workers' compensation claims, but they ignore the important legislative directive that claimants receive adequate administrative, procedural notice.

In contrast, the Director's interpretation serves to harmonize the two important intentions of the legislature with regard to claimants in Lobato's position. Rule IV(L)(3) implements this interpretation. The rule provides a procedure whereby employers or insurers can choose to provide amended notice to claimants with pre-amendment FALs in order to preserve their time-bar defenses to the selection of DIMEs. This procedure correctly emphasizes the importance of administrative notice and provides a way to expedite these particular open cases.

We ordinarily presume that citizens are aware of the laws that regulate their conduct. *Walton v. Walton*, 86 Colo. 1, 30, 278 P. 780, 790 (1929)(Butler, J., dissenting)("All persons are presumed to know the law."). However, this presumption is tempered by the requirements of due process and, specifically, the requirement of procedural notice. *See People v. Holmes*, 959 P.2d 406, 414 (Colo.1998). Agencies that have quasi-judicial functions, such as the Division and the ICAO, are required by procedural due process principles to give notice of their procedures to affected individuals. *See Douglas County Bd. of Comm'rs v. Public Utils.*, 829 P.2d 1303, 1310 (Colo.1992). The General Assembly included an administrative notice requirement in the Act.

The Rule IV(L)(3) procedure reconciles the two legislative directives inherent in the Act by providing a way to expedite claims while

ensuring correct administrative notice.[7] We note that Rule IV(L)(3) applies only to a finite set of claimants: those whose injuries occurred on or after July 1, 1991 and before August 5, 1998; whose FALs were filed before September 1, 1999; and who timely objected to the FAL but did not select a DIME before September 1, 1999. The rule applies only to this definable number of claims that will only decrease as they are resolved. In the legislative history of the 1999 amendment and in its plain language we find no intention to deprive these particular claimants of administrative notice.

## F. Conclusion

The ICAO and court of appeals decisions in this case derogate the General Assembly's policy in regard to administrative notice of procedural requirements. The ICAO majority would require claimants to select DIMEs within thirty days of a pre-amendment FAL, despite the fact that they received no administrative notice of such a requirement before the deadline passed. The court of appeals would require selection within thirty days of the effective date of the amendment, even where no revised notice of the new deadline has been sent. Both of these decisions effectuate the General Assembly's intent to make the 1998 amendment retroactive and expeditiously resolve existing cases but conflict with the intent to provide administrative notice to claimants.

We now hold that the interpretation embodied in Rule IV(L)(3) correctly harmonizes two important policies of the General Assembly. Lobato did not receive any notice which would have triggered the thirty-day time limit of the 1998 and 1999 amendments in his case. Therefore, those time limits did not apply to his case and his DIME selection was timely.

7. We have addressed a similar set of potentially conflicting legislative intentions before. In *People v. Fagerholm*, 768 P.2d 689 (Colo.1989), we considered the statute of limitations for collateral attacks of criminal convictions. The legislature clearly intended to limit litigation over stale claims when it enacted the provision, but later amended the statute with an exception for cases of justifiable excuse or excusable neglect, evidencing an intent to preserve the due process rights of defendants. We concluded that a five-

year grace period read into the statute "provide[d] a reasonable accommodation of the purposes sought to be achieved by the statute[,]" namely "ensur[ing] that finality attaches to adjudications of guilt, while simultaneously safeguarding the due process rights of convicted felons." 768 P.2d at 692. Rule IV(L)(3) similarly bridges the gap between the legislature's primary intent to expedite cases and its concern for adequate administrative notice.

## III.

Accordingly, we reverse the court of appeals' judgment and remand with directions to reinstate Lobato's claim and DIME report and return this case to the ALJ for further proceedings consistent with this opinion.

COATS, J., dissenting.

The Director of the Division of Worker's Compensation may not, any more than this court itself, ignore legislative dictates or rewrite statutes to reflect her own notions of fairness and good public policy. Because section 8–42–107.2, C.R.S. (2004), simply cannot be read as forgivingly as Division Rule IV(L)(3) would have it, I would reject the rule, enforce the statute as written, and affirm (although on other grounds) the court of appeals. I therefore respectfully dissent.

Prior to 1998 the statutory scheme permitted a claimant to dispute the findings of an authorized medical examiner with a contrary division Independent Medical Exam, as long as he objected within 60 days of the Final Admission of Liability. Although the claimant could not have any objections heard without a division IME, the statute did not specify a precise deadline for requesting one. The General Assembly, in 1998, attempted to resolve the ambiguity surrounding a claimant's failure to expeditiously secure an IME, by requiring that one be requested within 30 days of the mailing of the Final Admission of Liability; and again in 1999, by expressly making that requirement applicable to all open cases with a date of injury on or after July 1, 1991, for which a division IME had not been requested.

Whether or not the language of these amendments could be characterized as ambiguous for some purpose, it simply did not admit of any construction involving the imputation of a provision tolling the 30–day period until the claimant was given further notice by some "triggering event," even if such a saving provision would have been needed to preserve the constitutionality of the statute. In fact, however, construing the amendments to mean precisely what they say does not raise doubt about their constitutionality. Even without a specific time limitation imposed by statute or rule, no litigant could

reasonably consider himself entitled to maintain an action in perpetuity, simply by failing to pursue his claim with reasonable expedition. *See generally Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co.,* 698 P.2d 1340 (Colo.1985); C.R.C.P. 41(b); *cf. People v. Fuqua,* 764 P.2d 56 (Colo.1988) (court has obligation to rule expeditiously).

Because I believe that claimants like the petitioner have already subjected themselves to dismissal by failing (for years) to proceed with a necessary component of their claims, I do not believe they are unconstitutionally harmed by a specific statutory provision for the administrative clean-up of such long-dormant cases. Unlike certain matters, like questions of constitutional overbreadth, which may be raised on behalf of others whose fundamental constitutional rights are implicated by legislative action, questions concerning due process may be raised only to the extent that a litigant is himself adversely affected. *See Vill. of Hoffman Estates v. Flipside,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982). Since I think it clear that these statutory amendments were intended to apply as written and are unlikely to have any constitutionally prohibited effect, I would address any challenges of unconstitutional application according to the peculiar facts of the individual claim—not by preemptively rewriting the statute. The failure of a claimant, like the petitioner, to pursue his objections to an FAL for more than five years before being barred does not raise for me any constitutional concern.

Because I do not believe that the 1998 and 1999 amendments to section 8–42–107.2, when read precisely as they are written, threaten to be unconstitutional, or that they could be interpreted as the Director suggests, even if they were unconstitutional, I respectfully dissent.