Gary Lavon FLAKES, Petitioner

· v.

The PEOPLE of the State of
Colorado, Respondent.

No. 05SC593.

Supreme Court of Colorado,
En Banc.

Feb. 26, 2007.

As Modified on Denial of Rehearing
March 19, 2007.*

* Justice Eid does not participate.

Kim Dvorchak, Littleton, Colorado, Attorney for Petitioner.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General,

Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Douglas K. Wilson, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, Attorneys for Amicus Curiae Colorado State Public Defender.

Marsha L. Levick, Laval Miller–Wilson, Vincent Herman, Philadelphia, Pennsylvania, Attorneys for Amici Curiae Juvenile Law Center, National Juvenile Defender Center, Center on Children and Families, Southern Juvenile Defender Center, Pendulum Juvenile Justice, Northeast Juvenile Defender Center, The Center for Children's Law and Policy, and the Southern Poverty Law Center.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to consider the constitutionality of section 19–2–517 of the Colorado Revised Statutes—the direct file statute within the Children's Code. Petitioner Gary Flakes ("Flakes") asserts that the sentencing provisions of the direct file statute require an adult sentence under the circumstances of his case and violate the constitutional doctrines of equal protection, due process, uniformity of the laws, and separation of powers.

The direct file statute authorizes a prosecutor to charge a juvenile as an adult by filing certain enumerated charges directly in district court.[1] The parties agree that even though the direct file statute does not expressly authorize direct filing of charges not enumerated by the direct file statute, unenumerated charges may nonetheless be brought together with enumerated charges in a single prosecution. They disagree, however, as to whether the statute mandates an adult sentence where a juvenile is acquitted of the enumerated offenses but convicted of unenumerated offenses. We hold that the district court has the discretion to sentence a juvenile as an adult or as a juvenile when found guilty of unenumerated charges. We also hold that the direct file statute is constitutional. Because in Flakes' case it is unclear whether the district court exercised the discretion to decide whether to sentence Flakes as a juvenile before sentencing him as an adult, and because the district court did not make findings before imposing an adult sentence, we remand for re-sentencing consistent with this opinion.

## I. Facts and Procedural History

Gary Flakes, a juvenile, was charged as an adult in district court with two counts of first-degree murder (after deliberation),[2] two counts of first-degree murder (extreme indifference to human life),[3] and two counts of accessory to murder after the fact.[4] The El Paso District Attorney's office bypassed the juvenile courts and filed an information directly in district court under section 19–2–517, the direct file statute. The first-degree murder counts formed the jurisdictional basis for the District Attorney's decision to file the information directly in district court.[5] Though the direct file statute does not authorize the direct filing of accessory to murder charges, they were brought together with the murder charges under the judicially created theory of ancillary jurisdiction.

The charges arose out of a 1997 incident in which another juvenile, Jeron Grant, killed two young boys after he threatened them with a shotgun. Grant pointed the shotgun at the boys and pulled the trigger; he shot one boy in the neck, killing him. The second boy turned to run and Grant shot him in the back of the head, then shot again, killing him as well. Grant returned to his car, where Flakes was sitting, and drove away. Flakes was sixteen years old.

At trial, Flakes asserted they were simply joking around and only meant to scare the boys, not kill them. A jury convicted Flakes of one count of criminally negligent homi-

---

1. § 19–2–517, C.R.S. (2006). Statutes will be cited to the current date unless referring to an older version of the statute.

2. § 18–3–102(1)(a), C.R.S. (2006).

3. § 18–3–102(1)(d), C.R.S. (2006).

4. § 18–8–105(1) and (2), C.R.S. (2006).

5. Flakes had no previous felony adjudications or convictions.

cide[6] and two counts of accessory to murder after the fact, but it found Flakes not guilty of the first-degree murder charges that permitted him to be tried as an adult.

The district court imposed an adult sentence. The record is not clear as to whether the court believed it had discretion to enter a juvenile sentence: "I considered the factors with regard to sentencing [Flakes] as an adult and juvenile. And I simply find that the nature of the offense—I'm talking about the offense[s] [Flakes was] found guilty of ... do not allow that." Flakes was sentenced in the aggravated range to twelve years in prison for each count of accessory to murder, running concurrently. The court also sentenced Flakes to three years in prison for the criminally negligent homicide, to run consecutive with the twelve year sentence, for a total of sixteen years in the department of corrections. Grant, also tried as an adult, was convicted of two counts of accessory to murder and was sentenced to prison for two concurrent twelve year terms.

After the court of appeals affirmed the judgment and sentence in *People v. Flakes*, No. 99CA0924 (Colo.App. Nov. 30, 2000) (not selected for publication), Flakes filed a post-conviction motion with the district court pro se, challenging the legality of his sentence. In that motion, Flakes argued that his adult sentence was illegal because he was eligible for a juvenile sentence. His post-conviction counsel abandoned Flakes' original claim and instead argued that the district court failed to consider youthful offender sentencing. The district court denied Flakes' argument that he was eligible for a youthful offender sentence. Flakes appealed, adding the constitutional challenges we now face.

The court of appeals affirmed the district court's original sentence and declined to review the constitutional challenges because Flakes had not directly raised them in district court. *People v. Flakes*, No. 04CA1156, slip op. at 24 (Colo.App. June 30, 2005) (not selected for publication). Flakes petitioned for certiorari and we granted review of his constitutional challenges to the direct file statute.

Though the People urge us to dismiss the case as improvidently granted, and assert Flakes failed to raise his issues below, Flakes' pro se challenge to the legality of his sentence is sufficient to justify our review in this case. We begin our examination of the constitutionality of the direct file statute with an overview of Colorado's juvenile justice system and its evolution. Informed by this history, we next turn our attention to the direct file statute itself. Our discussion then focuses on the district court's jurisdiction to hear and impose sentence when a juvenile is guilty of unenumerated offenses. We also consider the statutory requirements for imposing a sentence on a juvenile guilty of unenumerated charges. Finally, we briefly address Flakes' constitutional challenges in light of our construction of the direct file statute.

## II. The Children's Code

■ Our task is to interpret and understand the intended meaning of the direct file statute. *See People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002). Direct filing subjects certain juveniles to adult criminal prosecution and sentencing, based on age and the nature of the allegations. § 19–2–517. The Children's Code[7] is designed to take into consideration the best interests of the juvenile, the victim, and the community, while holding public safety paramount. § 19–2–102, C.R.S. (2006). In contrast, the direct file statute, located within the Children's Code, exposes juveniles to adult criminal prosecution without a transfer hearing and creates an exception to the general protections offered to juveniles by the Code. Therefore, to properly understand the direct file statute as an exception to the Children's Code's purpose and intent, we begin by reviewing the Code and its history. *See Martin v. People*, 27 P.3d 846, 851 (Colo.2001) (quoting *Charnes v. Boom*, 766 P.2d 665, 667 (Colo.1988)) (looking

---

6. The jury was given a criminally negligent homicide instruction as a lesser included offense to murder. *See Mata–Medina v. People*, 71 P.3d 973, 978 (Colo.2003).

7. §§ 19–2–101 to –1305, C.R.S. (2006).

to the statutory scheme as a whole when interpreting a statute).

Over one hundred years ago, Colorado became one of the first states in the country to create a separate juvenile justice system.[8] The purpose was to separate juvenile offenders from adult offenders by creating a special system for the appropriate sanctioning of juveniles who violate the law. King, *Colorado Juvenile Court History* at 63.

In 1889, Colorado created a youthful correctional institution in Buena Vista for male persons between the ages of sixteen and thirty who were convicted of crimes punishable by a term not less than ninety days. S.B. 169, 1889 Sess. Laws 418, 420; *People v. Green,* 734 P.2d 616, 618 (Colo.1987). Ten years later, the General Assembly enacted a compulsory education law which, for the first time, granted exclusive jurisdiction to county courts to hear and determine complaints brought by truant officers against "juvenile disorderly person[s]." Act of Apr. 12, 1899 Colo. Sess. Laws 340, 344. This same law treated children between the ages of eight and fourteen, fourteen and sixteen, and older than sixteen years old differently, and it subjected them to different treatment.[9] Thus, from the beginning of our juvenile justice system, Colorado has differentiated among minors according to age generally and differentiated sixteen year old minors specifically.

In 1903, Colorado established its first formal juvenile justice system. King, *Colorado Juvenile Court History* at 64. The county courts were vested with exclusive jurisdiction over all cases where any child sixteen years of age or less was arrested for any violation of law. Act of Mar. 7, 1903 Colo. Sess. Laws 178, 182; 1903 Colo. Gen. Laws § 422 (hereinafter Act of 1903). In 1907, a separate juvenile court was created as a court of record and was granted original and exclusive jurisdiction over all criminal cases involving delinquent, dependent, or neglected children. Act of Apr. 3, 1907 Colo. Sess. Laws 324, 330. The purpose was to differentiate between minors and adults and avoid the horrors of subjecting children to both the process and consequences of prosecution in an adult system. King, *Colorado Juvenile Court History* at 64. This early history indicates a strong desire to treat delinquent minors as juveniles in need of rehabilitation, rather than as criminals. *People ex rel. Terrell v. Dist. Court,* 164 Colo. 437, 444–445, 435 P.2d 763, 766 (1967); King, *Colorado Juvenile Court History* at 66.

The direct file statute has its origins in 1923. That year the General Assembly amended the Act of 1903 by inserting the language "this Act shall not apply to crimes of violence punishable by death or imprisonment for life where the accused is over sixteen years of age."[10] H.B. 62, 1923 Sess. Laws 197, 198. This language became, by implication, the first direct file statute and remained unchanged until the 1960s. *Compare* Ch. 33 § 53, C.R.S. (1935) *with* § 22–1–2(17)(b), C.R.S. (1967).

In 1964, the General Assembly abolished separate juvenile courts in all districts except Denver, where the Denver Juvenile Court was authorized by constitutional amendment. Act of Feb. 20, 1964 Colo. Sess. Laws 437, 444; Colo. Const. Art. VI, § 15. Colorado adopted the Children's Code in 1967. 1967 Sess. Laws 993. That same year, juvenile court systems nationwide responded to the landmark case of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). King, *Colorado Juvenile Court History* at 66.

**8.** Illinois was first, although one author has suggested that Colorado's passage of the Act of April 12, 1899, mandating the separate treatment of child truants, which preceded Illinois' juvenile justice system, could constitute the first time in the country that delinquent children were afforded treatment separate from that of adults. Laoise King, *Colorado Juvenile Court History: The First Hundred Years,* 32 Colo. Law. 63 (2003) (hereinafter *Colorado Juvenile Court History* ).

**9.** The Act required that all children between eight and fourteen shall attend school, that no child under the age of fourteen shall be employed, that children between fourteen and sixteen shall attend school for at least half of each day, and that no child older than sixteen shall be held in a reformatory. 1899 Colo. Sess. Laws 340–44.

**10.** In 1923, in the same Act, the General Assembly gave a broad reach to the laws governing delinquent children: "[t]his Act shall apply only to children under eighteen years of age who are not [already institutionalized]." 1923 Sess. Laws 197.

■ In *Kent*, the Supreme Court held, in the context of a juvenile who was transferred to adult district court, that minors adjudicated under the District of Columbia's juvenile justice system were entitled to basic due process rights. *Kent*, 383 U.S. at 561, 86 S.Ct. 1045. Those rights include an opportunity for a hearing, representation by counsel, and judicial orders that include a statement of the reasons why the juvenile is being transferred to adult district court.[11] *Id.* Colorado incorporated *Kent's* holding into the part of the Children's Code that regulated the transfer of juveniles into adult district court; the modern Children's Code thus began to take shape. 1967 Sess. Laws 993; *see generally* King, *Colorado Juvenile Court History.*

In 1967, the language permitting direct filing was incorporated into the post-*Kent* transfer statute: "A child shall be charged with the commission of a felony only as provided [by the procedure to transfer juveniles to district court], *except* for crimes of violence punishable by death or life imprisonment where the accused is sixteen years of age or older." § 22–1–4(4)(b), C.R.S. (1967) (emphasis added). One year later, the General Assembly lowered the age a juvenile could be directly filed in district court from sixteen to the current age of fourteen. 1968 Sess. Laws 54.

In 1973, as part of a reform that repealed and reenacted the Children's Code, the General Assembly began, for the first time since 1923, the process of adding to the enumerated crimes exempting a juvenile from the protection of the juvenile justice system. *See* 1973 Sess. Laws 384, 385 (adding class two and class three felonies, crimes of violence, and frequent offenders to the list of enumerated direct file offenses). The General Assembly also added language that provided

the district court with full discretion to sentence a juvenile as a juvenile, regardless of whether the district court obtained jurisdiction by direct file or transfer.[12] *Id.*

The General Assembly created a separate direct file statute within the Children's Code in 1987, when the Children's Code was once again repealed and reenacted. 1987 Sess. Laws 695. The statute delineated the limits of the district court's authority over direct file cases. § 19–2–805, C.R.S. (1987); 1987 Sess. Laws 695, 740. Even with this change, the district court still retained its discretion to sentence a juvenile as a juvenile or an adult, and to remand cases back to juvenile court for sentencing. § 19–2–805(2), C.R.S. (1987).

The Children's Code was once again repealed and reenacted in 1996, and the direct file statute was relocated to its current place at section 19–2–517. 1996 Sess. Laws 1595, 1640; § 19–2–517, C.R.S. (1996). When the General Assembly reenacted the direct file statute, it created mandatory adult sentencing for certain offenses and permanently eliminated the juvenile court's ability to reacquire jurisdiction. 1996 Sess. Laws 1595, 1641. In the following years, the General Assembly added to the list of mandatory adult sentence offenses.[13]

■ The language of our modern direct file statute indicates that the General Assembly has expressly determined, and thereby limited, the classes of offenses requiring adult sentencing. As such, the direct file statute does not provide for mandatory adult sentences for unenumerated offenses. Rather, imposition of an adult sentence is left to the discretion of the district court as an exercise of its general jurisdiction over juvenile and criminal matters.

11. In Colorado, juveniles are also entitled to the essentials of due process and fundamental fairness. *People in Interest of J.A.M.,* 174 Colo. 245, 250, 483 P.2d 362, 364 (1971).

12. The language read: "Whenever criminal charges are either transferred to or filed directly in the district court pursuant to the provisions of this article, the judge of the district court shall have the power to make any disposition of the case that any juvenile court would have and shall

have the power to remand the case to the juvenile court for disposition at its discretion." § 22–1–4(4)(c), C.R.S. (1973).

13. Amendments were made in 1999, 2000, 2002, 2003, 2004, and 2006. *See, e.g.,* 1999 Sess. Laws 1369, 1370 (adding to the list of offenses which disqualify a juvenile for a youthful offender sentence).

### III. The Direct File Statute

When construing a statute we begin with the plain language of the statute and give the words their plain and ordinary meaning. *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223 (Colo.2005). If a statute is ambiguous, we examine the legislative goals underlying the provision, the circumstances under which it was adopted, and the consequences of possible alternative constructions. *Id.* at 223–24; § 2–4–203(1), C.R.S. (2006). We also consider the statute's declaration of purpose and legislative history. *Lobato*, 105 P.3d at 223.

As both parties acknowledge, the direct file statute does not provide any express authorization to the prosecutor to file unenumerated charges against a juvenile in district court. We also agree with the parties that the district court exercises ancillary jurisdiction to permit the filing of unenumerated charges that could not otherwise be brought pursuant to the direct file statute. Flakes contends that, as a result, the direct file statute sweeps up any unenumerated charges filed with enumerated offenses into a broad category of crimes the conviction of which requires an adult sentence. We disagree. Rather, we hold that the district court retains its discretion to sentence juveniles found guilty of unenumerated charges as either adults or juveniles. We begin our analysis with the language of the direct file statute.

The direct file statute enumerates the charges that a prosecutor may file against a juvenile directly in district court. § 19–2–517(1). The plain language of the statute explicitly limits the circumstances under which a prosecutor may directly file charges in district court: "A juvenile may be charged by the direct filing of an information in the district court or by indictment *only when* [the juvenile has been charged with an offense enumerated below]." § 19–2–517(1)(a) (emphasis added); *see Maddox v. People*, 178 Colo. 366, 369, 497 P.2d 1263, 1264 (1972) (strictly limiting direct filing to enumerated offenses under the then-existing transfer statute). None of the charges listed by the statute include the charge of accessory to murder after the fact. Thus, we agree with both the State and Flakes that section (1) of the direct file statute does not expressly grant authority to the prosecution to directly file accessory to murder charges in district court.

Having determined that the direct file statute is limited in scope to enumerated offenses, we turn to examine the district court's ancillary jurisdiction over unenumerated offenses. Ancillary jurisdiction is a judicially-created doctrine permitting the direct filing of unenumerated offenses with enumerated offenses. *People v. Jiminez*, 651 P.2d 395, 397 (Colo.1982) (holding that *"when a court has jurisdiction to entertain criminal proceedings* against a juvenile under [an older version of the direct file statute] any additional charges arising out of the same act or series of acts *can and must be* prosecuted in that same action even though they do not rise to [the requisite level of seriousness]") (emphasis added); *see People v. Dalton*, 70 P.3d 517, 522 (Colo.App.2002) (holding that the district court had ancillary jurisdiction to hear and impose sentence on a juvenile guilty of an unenumerated offense because the case included a charged enumerated offense). In Flakes' case, both parties agree that the district court had ancillary jurisdiction to hear and sentence Flakes for the conviction of the accessory to murder charges because the first-degree murder charges were included in the information directly filed in district court. The question is what sentence the district court may impose when exercising its ancillary jurisdiction over a juvenile found guilty of unenumerated offenses.

When the sentencing provisions of the direct file statute are read as a whole, it provides broad authority to the district court to impose an adult sentence. This broad authority also includes a limited authority to impose a juvenile sentence. Because Flakes did not qualify for the limited exceptions allowing for a non-adult sentence, he concludes that he must therefore have been subject to a mandatory adult sentence. We disagree with his reading of the statute.

Though broad, the sweep of the sentencing provisions of the direct file statute in section (3) is nonetheless limited to only those

charges enumerated in section (1) of the direct file statute. Section 19–2–517(3)(a) reads: "whenever charges are filed … in district court pursuant to this section, the judge shall sentence the juvenile as [an adult unless subsections (II) or (III) apply]." § 19–2–517(3)(a). "Pursuant to" means "as authorized by; under." *Black's Law Dictionary* 1272 (8th ed.2004). "Whenever," read in context with "pursuant to," thus limits adult sentences to whenever charges are authorized by, and therefore enumerated in, section (1) of the direct file statute. The statute's language does not reach unenumerated offenses.

The plain language of the direct file statute does not sweep sentencing for unenumerated offenses into the same category as enumerated offenses. To conclude otherwise—that the direct file statute's sentencing provision, by its silence, stretched beyond the scope of its authorizing provisions—would not be sensible. If we were to agree with Flakes, even misdemeanor and petty offenses filed with enumerated offenses would require an adult sentence. Given the General Assembly's careful and explicit determination of mandatory adult sentence offenses, none of which is less than a class four felony, we cannot conclude that through the statute's silence, it sweeps up any unenumerated offenses into its adult sentencing provisions.

▮▮▮ It also does not follow that, because Flakes did not qualify for sentencing under the limited non-adult sentence provisions, he was therefore subject to a mandatory adult sentence. The entire sentencing scheme of the direct file statute is limited to the enumerated offenses in section (1), including the subsections allowing for non-adult sentences. Thus, Flakes correctly notes that section 19–2–517(3)(c) does not

allow a judge to impose a juvenile sentence for unenumerated offenses. Subsection (3)(c) permits, at the discretion of the judge, a juvenile sentence if "the juvenile is convicted of a lesser included offense for which criminal charges could not have been [directly filed]." § 19–2–517(3)(c). A lesser included offense is a charge that is effectively brought at the same time as a charged offense for which the direct file statute already provides express authorization.[14] *See Rowe v. People*, 856 P.2d 486, 491 (Colo.1993) (explaining that an information charging the principal crime provides a defendant with sufficient constitutional notice of the lesser included offenses that do not appear in the information). Subsection (3)(c)'s scope is therefore limited, as is the rest of the direct file statute, to enumerated offenses or their lesser included offenses.

Flakes also could not have been sentenced as a juvenile under subsection 19–2–517(3)(a)(III). As a threshold matter, Flakes was too old to qualify.[15] Further, subsection (3)(a)(III) strictly limits mandatory adult sentences to a narrow set of offenses which are themselves enumerated in section (1) of the direct file statute. Thus, even if Flakes qualified for juvenile sentencing under subsection (3)(a)(III), his accessory to murder conviction, as an unenumerated offense, would not have qualified him for either a juvenile or an adult sentence under this or any other provision of the direct file statute.

▮▮▮ We also conclude from the plain language of the statute that the General Assembly never intended mandatory juvenile sentences for unenumerated offenses. First, nowhere in the direct file statute does the General Assembly allow for mandatory juvenile sentences. In fact, the direct file statute

---

**14.** The phrase "lesser included offense" is a legal term of art defined by statute. § 18–1–408(5), C.R.S. (2006). The parties occasionally and incorrectly refer to the accessory to murder charges as "lesser non-included offenses" in their briefs. Because the accessory to murder charges were not brought by Flakes as part of his theory of defense in this case, accessory to murder was not, properly speaking, a "lesser non-included offense" to first-degree murder. *See People v. Skinner*, 825 P.2d 1045, 1046–47 (Colo. App.1991) (explaining the difference between a

lesser included offense and a lesser non-included offense).

**15.** The direct file statute is limited to only those minors fourteen years or older, making a juvenile sentence under section (3)(a)(III) available only to fourteen and fifteen year old juveniles who do not commit certain serious offenses (e.g., a class one or class two felony, a crime of violence, or a habitual juvenile offender), and only after the court makes a "finding of special circumstances." § 19–2–517(1)(a).

specifically provides for the possibility that a juvenile will face a mandatory adult sentence for a certain class of offenses. § 19–2–517(3). As the history of the Children's Code illustrates, the direct file power was an express exception to the original Children's Code's mandate of a juvenile adjudication in all cases. *Compare* Act of 1903, *with* § 19–2–517, C.R.S. (2006). Next, the General Assembly permanently deprived the juvenile court of jurisdiction over those cases where the alleged acts qualify for a direct file into district court. § 19–2–517(2).[16] By doing so, it expressly cut off another avenue for mandatory juvenile sentencing. Thus, in light of both the language and history of the direct file statute, we conclude that the General Assembly precluded mandatory juvenile sentences once an information is filed directly in district court. *See People v. Cross*, 127 P.3d 71, 73 (Colo.2006) (noting that we do not add or subtract language to a statute where such language would contravene the legislature's intent).

 The direct file statute itself does not provide any sentencing authority for unenumerated offenses. However, to impose a legal sentence, a court must impose a sentence according to statutory authority. *Roberts v. People*, 130 P.3d 1005, 1007 (Colo. 2006); *People v. Dist. Court*, 673 P.2d 991, 995 (Colo.1983). Thus, we must look elsewhere for the court's sentencing authority. As a court of general jurisdiction, the district court has authority over criminal and juvenile matters.[17] It therefore follows that the criminal sentencing statutes and the Children's Code are each alternative sources for the district court's statutory sentencing authority. Where a district court determines that a juvenile sentence is appropriate, it must impose a sentence consistent with the Children's Code. *See generally* §§ 19–2–901 to –926, C.R.S. (2006) (post-adjudicatory process). Where a district court determines that an adult sentence is appropriate, it must sentence the juvenile consistent with the adult sentencing statutes. *See generally* §§ 18–1.3–101 to –1407, C.R.S. (2006) (sentencing in criminal cases).

 District courts have discretion to sentence a juvenile guilty of an unenumerated offense under either the Children's Code or the adult criminal sentencing statutes. The district court's discretionary decision is similar to the direct file statute's sentencing provisions in subsections (3)(a)(III) and (3)(c) for enumerated offenses. Discretionary sentencing is also consistent with the transfer statute, under which the district court also retains discretion to impose juvenile sentences. § 19–2–518(1)(d)(III), C.R.S. (2006); *People v. Rivera*, 968 P.2d 1061, 1066 (Colo. App. 1997). Finally, by reading the statute as requiring sentencing discretion, we avoid an interpretation that may give rise to the due process problems raised by Flakes in his appeal. Thus, reading the direct file statute as a whole and in a harmonious manner with the Children's Code, the district court retains discretion to sentence a juvenile guilty of a directly filed but unenumerated offense as a juvenile or an adult.

## V. Sentencing Hearings

 When a juvenile is sentenced as an adult, the sentencing court must explain why an adult sentence was chosen. *See Kent*, 383 U.S. at 560–62, 86 S.Ct. 1045 (requiring courts to give the reasons why a juvenile is to be subjected to adult treatment). Both the transfer and the direct file statutes contain this requirement. The transfer statute, amended in response to *Kent*, requires the court to make findings when determining whether a juvenile should be treated as a juvenile or an adult. § 19–2–518(3). The direct file statute also requires the court to make findings when exercising its discretion to sentence a juvenile as a juvenile or an adult. § 19–2–517(3)(a)(III). Reading these statutes together, a district court sentencing a juvenile found guilty of an unenumerated offense must also make the same findings before imposing a legal sentence. *S.A.S. v.*

---

**16.** Section 19–2–517(2) states that once an information has been directly filed in district court, "the juvenile court shall no longer have jurisdiction over proceedings concerning said charges."

**17.** Because the General Assembly has the power to create and define crimes, the direct file statute properly subjects juveniles to the district court's general criminal jurisdiction. *See Terrell*, 164 Colo. at 444–445, 435 P.2d at 766.

*Dist. Court*, 623 P.2d 58, 61 (Colo.1981) (citing *Kent* and holding that a juvenile must be accorded the essentials of fairness and due process before he may be subjected to a curtailment of his liberty interest in avoiding a criminal conviction).

▆▆▆ A decision to impose an adult sentence on a juvenile without judicial findings risks an arbitrary deprivation of a juvenile's liberty interest in avoiding a harsh punishment. *A.C. v. People*, 16 P.3d 240, 242 (Colo.2001) (noting that an adult sentence is the harsh punishment that the Children's Code was designed to avoid). Further, such findings are required for meaningful appellate review. *Kent*, 383 U.S. at 560–62, 86 S.Ct. 1045. Requiring a court to make findings already imposed by other statutes thereby avoids due process infirmities without creating any additional burdens. Therefore, we hold that a district court must make findings before the court exercises its discretion when imposing a sentence after a juvenile has been found or pleaded guilty to an unenumerated directly filed offense.[18]

▆▆▆ The transfer statute already provides the required statutory framework a district court must follow when making findings in support of the sentence it will impose. § 19–2–518(3)–(4). Section 19–2–518(3)(b) of the transfer statute sets the standard of evaluation and section 518(4)(b) lists those factors necessary to expose a juvenile to adult criminal process and also creates a record sufficient for appellate review. Therefore, the court's findings should include, but are not limited to, findings that take into consideration the interests of the juvenile and the community in imposing either a juvenile or adult sentence, the nature and seriousness of the offense including the use of weapons, the age and relative maturity of the juvenile, any criminal or delinquent history, and the impact of the offense on the victim and on the community. *Id.*

▆▆▆ In Flakes' case, the record does not adequately reflect whether the district court

fully exercised its sentencing discretion. Though the court said that it "considered the factors with regard to sentencing [Flakes] as an adult and juvenile," it did not state what those factors were or why they were insufficient to impose a juvenile sentence. Rather, the court seemed to say that it did not believe that the crimes Flakes was found guilty of allowed a juvenile sentence. In light of our holding that the court did have discretion to sentence Flakes as either an adult or a juvenile, and because the record is ambiguous as to whether the district court exercised its discretion, the case must be remanded for re-sentencing consistent with this opinion. *See Adair v. People*, 651 P.2d 389, 392 (Colo. 1982).

We now turn to Flakes' constitutional challenges. Because many of his concerns rest on the notion that the direct file statute requires a mandatory adult sentence, our review is brief.

## VI. Constitutional Analysis

▆▆▆ Flakes argues that even if the district court had discretion to sentence him as a juvenile, the statute still violates equal protection because of unjustified or irrational age classifications. However, because Flakes was never in a position to be directly affected by the direct file statute based on age, he lacks standing to bring a constitutional challenge to the direct file statute on that basis. *See People v. Argomaniz–Ramirez*, 102 P.3d 1015, 1019 (Colo.2004) (quoting *People v. Kibel*, 701 P.2d 37, 43 (Colo.1985) ("A party does not have standing to challenge the constitutionality of a statute unless that party is directly affected by the alleged constitutional defect.") ).

▆▆▆ Flakes' remaining arguments ultimately fail in light of our construction of the direct file statute. First, the direct file statute does not discriminate against juveniles in district court based on whether the court acquired jurisdiction through the direct file statute or the transfer statute; therefore

---

**18.** Though juveniles do not have a fundamental due process right to be treated as a juvenile, it is not clear that a juvenile charged as an adult, tried as an adult, and afforded the full protection of adult due process standards, should then be subject to the lower due process protections of a juvenile at sentencing. Our holding here is that,

even under the lower due process standards afforded to juveniles, a district court is required to make findings. *See, e.g., People v. McCoy*, 939 P.2d 537, 540 (Colo.App.1997) (finding that a defendant is entitled to the minimum due process afforded to adults when revoking a sentence to the Youthful Offender System).

the direct file statute does not violate the requirement of uniform operation of laws. *See People v. Johnson,* 987 P.2d 855, 858 (Colo.App.1998) (finding that the direct file statute does not violate the uniform operation of laws provision in the Colorado Constitution). Finally, the direct file statute does not violate the separation of powers doctrine. Prosecutorial discretion, balanced by the district court's sentencing discretion for unenumerated charges, is not unconstitutional. *People v. Thorpe,* 641 P.2d 935, 940 n. 4 (Colo.1982).

## VII. Conclusion

District courts have discretion to sentence a juvenile guilty of an unenumerated but directly filed offense under either the Children's Code or the adult criminal sentencing statutes. Because it is unclear from the record whether the district court exercised its discretion, and because the district court failed to make adequate findings before imposing an adult sentence, we reverse the judgment of the court of appeals upholding Flakes' sentences and remand with directions for the district court to conduct a new sentencing hearing consistent with this opinion.

Justice EID does not participate.