The **PEOPLE** of the State of Colorado, Plaintiff–Appellant,

v.

Daniel Joseph **GILLILAND**, Defendant–Appellee.

No. 87SA181.

Supreme Court of Colorado, En Banc.

Feb. 13, 1989.

---

Roger B. Larsen, Dist. Atty., Steven B. Rich, Chief Deputy Dist. Atty., Norman C. Cooling, Deputy Dist. Atty., Canon City, for plaintiff-appellant.

No appearance for defendant-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn Lievers, First Asst. Atty. Gen., Denver, for amicus curiae Colorado Dept. of Institutions.

QUINN, Chief Justice.

The question in this case is whether subsequent to the commitment of a defendant to the Colorado State Hospital as a result of an insanity adjudication, the committing court retains jurisdiction to rule on a prosecutorial motion for an order autho-

rizing the professional staff of the hospital to administer antipsychotic medication to the nonconsenting and mentally incompetent defendant. The district court held that it was without jurisdiction to rule on such a motion. We reverse the judgment and remand the case for further proceedings.

## I.

On January 24, 1984, the defendant, Daniel Joseph Gilliland, was charged in the district court of Fremont County with first degree arson and second degree burglary, allegedly committed on January 10, 1984. The defendant, through his attorney, entered a plea of not guilty by reason of insanity, and the district court on May 28, 1985, adjudicated the defendant not guilty by reason of insanity and committed him to the Colorado State Hospital until such time as he shall become eligible for release.[1]

On March 13, 1987, the district attorney filed a motion alleging that the defendant had refused to accept medication necessary for his treatment and requesting the court to authorize the professional staff of the Colorado State Hospital to administer such medication to him. The motion was supported by an affidavit of Anne C. Courtright, M.D., a staff psychiatrist of the Colorado State Hospital, stating that the defendant refuses such medication and is incompetent to effectively participate in his treatment decisions, that the medication is necessary to prevent a significant and likely long-term deterioration in his mental condition, that a less intrusive treatment alternative is not available, and that the defendant's need for treatment by antipsychotic medication is sufficiently compelling to

override any bona fide and legitimate interest he might have in refusing treatment. The district court conducted a hearing and denied the motion, ruling that Colorado's statutory scheme for insanity commitments, §§ 16–8–101 to –122, 8A C.R.S. (1986 & 1988 Supp.), did not provide the court with any jurisdictional basis to address the district attorney's motion.

The district attorney filed this appeal, pursuant to section 16–12–102(1), 8A C.R.S. (1986),[2] and claims that the district court erred in concluding that it lacked jurisdiction to entertain the motion. After briefs were filed, we issued an order directing the district attorney to show cause why this appeal should not be dismissed for lack of standing on his part to prosecute the appeal.[3] The district attorney has responded to the order to show cause.

## II.

We first address the question whether the district court had subject matter jurisdiction to hear and determine the district attorney's motion for an order authorizing the professional staff of the state hospital to administer antipsychotic medication to a nonconsenting and incompetent defendant committed to the hospital as a result of an adjudication of not guilty by reason of insanity. We are satisfied that Colorado's statutory scheme for the automatic commitment of criminal defendants adjudicated not guilty by reason of insanity manifests a clear legislative intent to vest the committing court with subject matter jurisdiction to resolve questions relating to the treatment needs of the committed defendant and that such jurisdiction contin-

---

1. The district court expressly committed the defendant to the Colorado State Hospital rather than to the custody of the Department of Institutions as the court should have done pursuant to section 16–8–105(4), 8A C.R.S. (1986).

2. Section 16–12–102(1), 8A C.R.S. (1986), permits the district attorney to appeal any decision of the trial court in a criminal case upon any question of law. The district attorney's notice of appeal was filed on May 15, 1987, pursuant to the former version of C.A.R. 4(b)(2), which authorized prosecutorial appeals to be filed in the

supreme court. Effective August 1, 1988, C.A.R. 4(b)(2) was amended to require such appeals to be filed in the court of appeals.

3. This court's order to show cause stated that the district attorney must show cause in writing why this appeal "should not be dismissed for lack of standing by the District Attorney to prosecute this appeal, in that it appears that the Department of Institutions would be the appropriate party to pursue the issue of treatment."

ues until such time as the defendant is unconditionally released from the order of commitment.

## A.

Subject matter jurisdiction relates to a court's authority to hear and determine the particular type of case before it. *See Stuckey v. Stuckey,* 768 P.2d 694, 695 (Colo.1989). While the district courts of Colorado have general jurisdiction over criminal cases pursuant to article VI, section 9 of the Colorado Constitution, *see People ex rel. Terrell v. District Court,* 164 Colo. 437, 443, 435 P.2d 763, 766 (1967), it is the constitutional prerogative of the legislature to define crimes and to establish affirmative defenses for acts that might otherwise be criminal. *People v. Ledman,* 622 P.2d 534, 539 (Colo.1981). The Colorado General Assembly has enacted a comprehensive statutory scheme relating to the insanity defense and the consequences of an insanity adjudication.

A person who is insane "is not responsible for his conduct defined as criminal." § 18–1–802, 8B C.R.S. (1986).[4] By asserting the insanity defense, the defendant admits the act charged but denies criminal responsibility for the act. *Leick v. People,* 136 Colo. 535, 546, 322 P.2d 674, 681 (1958), *cert. denied* 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958). The defendant's denial of criminal responsibility "is predicated on a claim of mental disease or defect which, by reason of its existence, relieves him of criminal responsibility for his conduct." *People v. Chavez,* 629 P.2d 1040, 1047 (Colo.1981). Upon an insanity adjudication, Colorado's statutory scheme expressly provides for the automatic commitment of the adjudicated defendant to the

custody of the Department of Institutions until such time as the defendant is determined to be eligible for release. § 16–8–105(4), 8A C.R.S. (1986).

The automatic commitment requirement of Colorado's statutory scheme serves two basic purposes. First, it provides the custodial institution with an opportunity to observe and examine the defendant in order to determine his mental condition and to initiate an effective treatment program. *Chavez,* 629 P.2d at 1048. Section 16–8–105(4), 8A C.R.S. (1986), furthers this goal by requiring the Executive Director of the Department of Institutions, upon commitment of the defendant, to "designate the state facility at which the defendant will be held for care and psychiatric treatment" and authorizes the director to transfer the defendant to another institution for the purpose of providing him with a treatment program consistent with his needs. *Chavez,* 629 P.2d at 1049. Since an insanity adjudication is generally indicative of a continuing state of mental illness, it is reasonable to assume that, until the contrary is shown, the committed defendant poses a danger to the public by reason of his mental condition. *Id.* The General Assembly expressly addressed this public safety goal when it established the following statutory standard for releasing a defendant from an insanity commitment or for determining his eligibility for conditional release for crimes allegedly committed on or after July 1, 1983:

[t]hat the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or others or to the community in the reasonably foreseeable future, and is capable of distinguishing right from wrong and has substantial capacity to conform

---

4. Section 16–8–101(1), 8A C.R.S. (1986), states that the applicable test of insanity is as follows:
   A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act is not accountable. But care should be taken not to confuse such mental disease or defect with moral obliquity, mental depravity, or passion growing

out of anger, revenge, hatred, or other motives, and kindred evil conditions, for when the act is induced by any of these causes the person is accountable to the law.
The term "diseased or defective in mind," as used in this definition, "does not refer to an abnormality manifested only by repeated criminal or otherwise antisocial conduct." § 16–8–101(2), 8A C.R.S. (1986).

his conduct to the requirements of law.[5] § 16-8-120(3), 8A C.R.S. (1986).

### B.

In keeping with the dual purposes of the automatic commitment requirement, various features of Colorado's statutory scheme manifest an obvious legislative intent to vest the committing court with continuing subject matter jurisdiction to determine questions relating to the treatment needs of a committed defendant. The committing court, for example, is required to approve any temporary removal of the defendant from the custodial institution for purposes of care and rehabilitation activities whenever the district attorney or the defendant's attorney objects to the proposed removal. § 16-8-118, 8A C.R.S. (1986). Moreover, when the chief officer of the institution to which the defendant has been committed determines that the defendant "no longer requires hospitalization because he no longer suffers from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future," the officer is required to report this determination "to the court that committed the defendant and the prosecuting attorney" and to include "in the report a report of examination equivalent to a release examination." § 16-8-116(1), 8A C.R.S. (1986). Within thirty days of receiving the report, the committing court is required to set a release hearing. § 16-8-116(2), 8A C.R.S. (1986).[6] If the court or the jury finds the defendant ineligible for release,[7] the court is required to recommit the defendant to the custody of the Department of Institutions. § 16-8-115(3)(a), 8A C.R.S. (1986). If, on the other hand, the defendant is found eligible for release, the court is authorized to impose such terms and conditions as are in the best interest of the defendant and the community. *Id.* A defendant conditionally released remains under supervision of the Department of Institutions until such time as the committing court enters a final order of unconditional release. § 16-8-115(3)(c), 8A C.R.S. (1986). The statutory scheme also requires the committing court to review the terms and conditions of a conditional release, including the mental status of the conditionally released defendant, at least once every twelve months. § 16-8-115(3)(d), 8A C.R.S. (1986).

The aforementioned statutory provisions make it abundantly clear that the legislature did not intend to terminate the district court's jurisdiction over a criminal case resulting in an insanity adjudication upon the entry of an order of commitment. On the contrary, the design of the statutory scheme is to impose on the district court the ultimate responsibility for decisions relating to the defendant's release,

---

5. Section 16-8-105(4), 8A C.R.S. (1986), also addresses the public safety aspect of the commitment process by authorizing the Executive Director of the Department of Institutions to transfer the committed defendant to another institution if such transfer would be conducive to the protection of the public or the protection of the personnel of the institution in which the defendant is presently placed.

6. A committing court's continuing jurisdiction to determine questions relating to the treatment needs of a committed defendant is further evidenced by section 16-8-115(1), 8A C.R.S. (1986), which authorizes the court to order a release hearing at any time on its own motion. Section 16-8-115(1) also requires the committing court to conduct a release hearing "upon motion of the defendant made after one hundred eighty days following the date of the initial commitment order." However, except for the first hearing following the initial commitment order, the defendant is not entitled to a hearing within one year subsequent to any previous hearing unless the court for good cause permits such hearing. *Id.*

7. Section 16-8-102(4), 8A C.R.S. (1986), defines "ineligible for release" as meaning "the defendant is suffering from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community, in the reasonably foreseeable future, if he is permitted to remain at liberty." The term "ineligible to remain on conditional release" is defined in section 16-8-102(4.5), 8A C.R.S. (1986), to mean that "the defendant has violated one or more conditions in his release, or the defendant is suffering from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future, if he is permitted to remain on conditional release."

recommitment, conditional release, and unconditional release from the initial order of commitment. A committing court would be unable to effectively carry out this responsibility unless it had the requisite subject matter jurisdiction to hear and determine questions relating to the treatment needs of a committed defendant.

## C.

According subject matter jurisdiction to the district court in this case finds support in our opinion in *Kort v. Carlson*, 723 P.2d 143 (Colo.1986). In that case Carlson was charged with first degree murder of his parents and, after being found incompetent to stand trial, was committed to the Colorado State Hospital until restored to competency.[8] Because Carlson refused to participate in the therapy program at the hospital, the superintendent filed a motion requesting the court to review his nonparticipation and to order him to cooperate in the treatment program. In response to the superintendent's motion, Carlson filed a motion for the appointment of an outside psychiatrist to administer his treatment program. In denying the superintendent's motion and in granting Carlson's motion, the district court ruled that the effective treatment of the defendant's multiple personality disorder required hypnotic treatment by a therapist in whom the patient has confidence, that the hospital had no one on its staff who could appropriately treat the defendant's condition, and that the state was required to pay the outside therapist's fees and seek necessary funding from the legislature for such expenditures. The superintendent thereafter petitioned this court for an order directing the district court to show cause why its order should not be vacated.

Although we ultimately determined in *Carlson* that the district court had exceeded its authority by ordering a particular treatment program for the defendant without having first found that the defendant's right to treatment had been denied, we expressly acknowledged in our opinion that section 16-8-105(4), 8A C.R.S. (1986), which requires the Executive Director of the Department of Institutions to designate the state facility in which a defendant adjudicated not guilty by reason of insanity is to be placed for care and treatment, does confer a right to proper treatment on a defendant committed to the Department of Institutions as a result of his mental incompetency to proceed. 723 P.2d at 148. In making that determination we drew upon the federal district court's decision in *Romero v. Schauer*, 386 F.Supp. 851 (D.Colo.1974), which held that Colorado's statutory scheme guarantees a right to treatment to mentally ill persons involuntarily committed to an institution regardless of the ultimate place of commitment and that giving patients placed in the penitentiary psychiatric treatment that is substantially inferior to the treatment available to patients in the state hospital violated equal protection of the laws. With *Romero* as support, we stated in *Carlson* that "[c]onstruing the criminal commitment provisions to establish a right to treatment is consistent with the statutory language and its purpose of restoring persons criminally committed to competency if possible" and that a defendant's claim of lack of treatment or inadequate treatment, under proper circumstances, "could support the exercise of a district court's supervisory and remedial powers to ensure a criminally committed defendant's right to treatment." *Carlson*, 723 P.2d at 148.

Since, as *Carlson* indicates, a committing court has jurisdiction to determine whether a defendant's right to treatment has been violated when the basis of the commitment is a defendant's incompetency to proceed, we know of no reason why a committing court should not also have jurisdiction to determine questions relating to the treatment needs of a committed defendant when the basis of the commitment is the defendant's insanity at the time of the

---

**8.** A defendant is "incompetent to proceed" when he "is suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel." § 16-8-102(3), 8A C.R.S. (1986).

commission of the crime and when the defendant's present incompetency prevents him from effectively participating in treatment decisions. We accordingly hold that a committing court has subject matter jurisdiction to hear and determine issues relating to the care and treatment of a defendant committed to the Department of Institutions as a result of an insanity adjudication and that such jurisdiction continues in the committing court until the defendant is unconditionally released from the order of commitment.

### D.

Although we do not pass upon the merits of the motion relating to the defendant's treatment needs, we believe it appropriate to delineate the controlling legal standard for resolving the motion on remand. While we recognized in *Carlson* a right to treatment and further acknowledged the jurisdiction of the committing court to address an alleged violation of that right, we strongly suggested that decisions relating to the day-to-day treatment of committed defendants are best left to those responsible for such treatment. *Carlson*, 723 P.2d at 148–50. The standard for exercising jurisdiction in such instances should not be based on whether the custodial institution has made the very best treatment decision but, rather, whether it has made a reasonably informed decision in light of relevant information and within the permissible range of professional discretion. *Id.* In the instant case, however, the motion filed with the district court raises a fundamental question about the state's responsibility for treating a committed defendant incompetent to participate in treatment decisions, under circumstances where the defendant's refusal to accept treatment might well result in a serious and irreparable deterioration in his mental condition. Such a motion will clearly support the district court's exercise of subject matter jurisdiction over matters relating to the treatment needs of the defendant.

A person committed to the Department of Institutions for care and treatment as the result of an insanity adjudica-

tion is entitled to the same general quality of treatment available to a civilly committed patient. *Romero*, 386 F.Supp. at 859–61; *Marshall v. Kort*, 690 P.2d 219, 223 n. 6 (Colo.1984). In *People v. Medina*, 705 P.2d 961 (Colo.1985), we considered whether the professional staff of a state mental health facility could administer antipsychotic medication to a civilly committed patient who was allegedly incompetent to participate in the treatment decision, notwithstanding the patient's objection to such medication. We noted in *Medina* that the forcible medication of a patient with antipsychotic drugs, which can cause serious and varied side effects and carry with them the risk of serious and possibly permanent disabilities in the patient, constitutes a significant intrusion on the patient's bodily integrity. 705 P.2d at 968–69. We went on to hold that, unless there is an emergency that poses an immediate and substantial threat to the life or safety of the patient or others in the institution, antipsychotic medication may be administered to a nonconsenting mentally ill patient incapable of making an informed treatment decision only after the trial court conducts a full and fair adversary hearing on the treatment decision and is satisfied by clear and convincing evidence that: (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious bodily harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest in the patient in refusing treatment. 705 P.2d at 973–74.

Our holding in *Medina* is equally applicable to this case. On remand, therefore, the district court should follow *Medina* in determining whether to authorize the professional staff of the Colorado State Hospital to administer antipsychotic medication to the nonconsenting defendant.

## III.

Since we issued an order directing the district attorney to show cause why this appeal should not be dismissed for lack of standing on his part to prosecute the appeal, we believe it appropriate to address briefly this aspect of the case. In our show cause order we suggested that the Department of Institutions might be the appropriate party to pursue the issue of treatment. We are now satisfied, however, that the district attorney has requisite standing in this matter.

The district attorney's legal interest in an insanity adjudication does not end with the order of commitment but continues until such time as the defendant is unconditionally released from the order of commitment. The district attorney, for example, is authorized to request a release hearing at any time. § 16–8–115(1), 8A C.R.S. (1986). Moreover, as previously mentioned, the district attorney is also authorized to object to any proposed temporary removal of a committed defendant from a custodial institution for purposes of care and rehabilitation activities, and the filing of such an objection prohibits the removal until the committing court conducts a hearing and approves the removal. § 16–8–118, 8A C.R.S. (1986). Furthermore, if a committed defendant is conditionally released from an institution, the director of the mental health facility charged with continuing treatment is required to make a written report every three months to the district attorney concerning the treatment and status of the defendant. § 16–8–115(3)(b), 8A C.R.S. (1986). If the district attorney has probable cause to believe that the defendant has become ineligible to remain on conditional release, he may make an application for an order or warrant for the arrest of the defendant. § 16–8–115.5(4)(a), 8A C.R.S. (1986). Section 16–8–115.5(5)(a), 8A C.R.S. (1986), further empowers the district attorney to file a petition to revoke the defendant's conditional release whenever the defendant has become ineligible to remain on conditional release by reason of a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community, in the reasonably foreseeable future.

These statutory provisions vest the district attorney with a sufficient legal interest in the commitment and post-commitment phases of an insanity adjudication to support the district attorney's standing to pursue the issue of treatment before the district court and to prosecute this appeal.

## IV.

In summary, we reverse the judgment dismissing the district attorney's motion as not within the subject matter jurisdiction of the district court, and we discharge the rule to show cause why this appeal should not be dismissed for lack of standing on the part of the district attorney. We remand the case to the district court for further proceedings consistent with the views herein expressed.