Colorado Court of Appeals Opinions || April 21, 2016

Colorado Court of Appeals -- April 21, 2016
2016 COA 57. No. 11CA2476. People v. Sandoval.

  

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 57  

 
 

 Court of Appeals No. 11CA2476
 City and County of Denver District Court No. 10CR10078
 Honorable Christina M. Habas, Judge

 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Steven J. Sandoval,

 Defendant-Appellant.

 JUDGMENT AND SENTENCE VACATED
 AND CASE REMANDED WITH DIRECTIONS

 Division IV

 Opinion by JUDGE MILLER
 Hawthorne and Bernard, JJ., concur

 Announced April 21, 2016

 Cynthia H. Coffman, Attorney General, Michael D. McMaster, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

  

 ¶ 1 Defendant,1 Steven J. Sandoval, was convicted of sexual

 assault in Denver District Court. As a sixteen-year-old at the time of the events in question, he could be charged only as a juvenile in Denver Juvenile Court unless his conduct constituted an enumerated offense under the direct file statute then in effect, Ch. 122, sec. 6, § 19-2-517(1)(a), 2006 Colo. Sess. Laws 422-23. (Citations in this opinion to section 19-2-517 are to the version in effect in 2007.) But neither that charge nor another that was dismissed qualified under that statute.

 ¶ 2 We must now decide the consequence of this confusion. We conclude that the district attorney never properly invoked and the Denver District Court never acquired subject matter jurisdiction over the case, and thus the conviction is a nullity. As a result, the conviction must be vacated and the case remanded with directions to the district court to dismiss it without prejudice.

 I. Facts

 ¶ 3 In 2007, the fifteen-year-old victim attended a quinceanera (fifteenth birthday party) for a friend. At the quinceanera, she saw other high school classmates, including defendant. Another girlfriend invited the victim and other teenagers to a different party at another house with no adults present. There, the victim and some of the other teenagers drank alcohol and smoked marijuana. Defendant brought the victim a drink mixed with a crushed pill, which she drank. Afterward, the victim appeared to be dizzy, stumbled, and had difficulty talking.

 ¶ 4 One of the male teenagers took the victim into an empty room, pushed her down, and sexually assaulted her. Defendant and another male teenager joined them and also sexually assaulted the victim.

 ¶ 5 When questioned that night, the victim told the police that she had consensual sex. Two and one-half years later, the victim saw a counselor after engaging in cutting herself and suicidal behavior. She reported the sexual assaults to the counselor and then to the police.

 II. Procedural Background

 ¶ 6 The prosecution moved to directly file two charges against defendant in Denver District Court: (1) sexual assault by causing submission of the victim through the application of physical force (section 18-3-402(1)(a), (4)(a), C.R.S. 2015); and (2) sexual assault of the victim while he knew she was incapable of appraising the nature of her conduct (section 18-3-402(1)(b)). The motion alleged that the offenses occurred when defendant was sixteen years old, that the sexual assault constituted a crime of violence under section 18-1.3-406(2)(a)(I), (b)(I), C.R.S. 2015, and that the case qualified for direct filing under section 19-2-517(1)(a)(II)(A). The district court granted the motion.

 ¶ 7 The prosecution later moved to dismiss the first count, sexual assault through physical force. The district court granted the motion and proceeded to trial on the second and only remaining count, sexual assault while the victim was incapable of appraising the nature of her conduct. After the first trial ended in a hung jury, a second jury found defendant guilty.

 ¶ 8 Prior to sentencing, however, the prosecutor raised concerns with respect to proceeding in the district court on only the second count, the one on which defendant was convicted. She noted that this count was not a crime of violence under section 18-1.3-406 and thus was not eligible for direct filing in the district court. She argued that defendant’s conviction could nonetheless stand as an

  

 adjudication and he could be sentenced in accordance with the Children’s Code (title 19 of the Colorado Revised Statutes).

 ¶ 9 Defendant then moved to dismiss the case for lack of jurisdiction, arguing that the district court was divested of jurisdiction after the enumerated count of violence had been dismissed.

 ¶ 10 The district court denied the motion. It ruled that under article VI, section 9 of the Colorado Constitution, district courts have general jurisdiction. The court concluded that because the first count constituted a crime of violence, it could keep ancillary jurisdiction over the second, nonenumerated count or send the case to the juvenile court. See Flakes v. People, 153 P.3d 427, 434 (Colo. 2007). As a matter of judicial efficiency, the district court elected to retain ancillary jurisdiction but to sentence defendant under the juvenile sentencing laws. Noting that, under the Children’s Code, defendant would be entitled to cross-examine the person who administered the offense specific evaluation or the adult probation representative, the district court continued the sentencing hearing. Defense counsel asked the court to enter the case as a "JD" (juvenile delinquency) rather than a "CR" (criminal) case so that

  

 there would be no question that defendant did not have an adult conviction. The court denied the motion, stating that changing the case in this way was not possible.

 ¶ 11 The district court sentenced defendant to eight years of sex offender specific intensive probation and ninety days in jail.

 III. Jurisdiction

 ¶ 12 Defendant now contends the Denver District Court lacked subject matter jurisdiction to proceed because neither offense charged in the complaint was a crime of violence under section 181.3-406 and thus did not qualify for direct filing in the district court. He further contends the proceedings before the district court were a nullity and that the case must be remanded to the district court for dismissal. We agree.

 ¶ 13 As a preliminary matter, we note that the Children’s Code defines "juvenile court" as both the Denver Juvenile Court and the juvenile division of the district courts in other districts. § 19-1103(70), C.R.S. 2015. Notwithstanding that definition, the Denver Juvenile Court, unlike a juvenile division of a district court, is a separate court distinct from the Denver District Court. The jurisdiction of the Denver Juvenile Court is limited to juvenile matters, see § 13-8-103, C.R.S. 2015, and its judges are appointed separately from district judges. See §§ 13-8-104, 13-8-108, C.R.S. 2015. In this case, we address the jurisdiction of only the Denver District Court and the Denver Juvenile Court, respectively, and not any similar issues that might arise in any of the other twenty-one judicial districts in the state.

 A. Standard of Review

 ¶ 14 We review questions of law, including challenges to

 jurisdiction and issues of statutory and constitutional interpretation, de novo. People v. Maser, 2012 CO 41, ¶ 10 (jurisdiction); Bostelman v. People, 162 P.3d 686, 689 (Colo. 2007) (statutory interpretation); Bruce v. City of Colorado Springs, 129 P.3d 988, 992 (Colo. 2006) (constitutional interpretation).

 B. Statutory and Constitutional Interpretation

 ¶ 15 When interpreting statutes, we must give effect to the intent of the General Assembly, which is vested with the power to define criminal conduct and to establish the legal components of criminal liability. Bostelman, 162 P.3d at 689, 693; People v. Vecellio, 2012 COA 40, ¶ 14. To determine the General Assembly’s intent, we look first to the language of the statute itself. Bostelman, 162 P.3d at 690. If the language is clear, we should interpret the statute according to its plain and ordinary meaning. People v. Bruno, 2014 COA 158, ¶ 7. We also apply generally accepted principles of legislative drafting, such as according words their plain or common meaning, in construing constitutional amendments. See Bruce, 129 P.3d at 993. We presume statutes are constitutional, and if a challenged statute can be construed several ways, one of which is constitutional, we must adopt the constitutional construction. People v. Schoondermark, 699 P.2d 411, 415 (Colo. 1985); People v. Houser, 2013 COA 11, ¶ 41.

 C. The Statutory Framework

 ¶ 16 Article 2 of the Children’s Code creates "a system of juvenile justice that will appropriately sanction juveniles who violate the law." § 19-2-102(1), C.R.S. 2015. The jurisdiction of the juvenile court for such cases, as pertinent here, is spelled out in section 19-2-104(1)(a)(I), C.R.S. 2015, as follows:

 $$(1) Except as otherwise provided by law, the juvenile court shall have exclusive original jurisdiction in proceedings:

 $$(a) Concerning any juvenile ten years of age or older who has violated:

  

 $$(I) Any federal or state law [with certain exceptions not relevant here].

 Thus, the statutory language clearly vests in the Denver Juvenile Court "exclusive original jurisdiction" over cases involving juveniles who (1) are at least ten but less than eighteen years old, see § 19-1103(8) and (68); and (2) violate a state statute, "[e]xcept as otherwise provided by law."2

 ¶ 17 The direct file statute, section 19-2-517, creates the relevant exception in this case. "Direct filing subjects certain juveniles to adult criminal prosecution and sentencing, based on age and the nature of the allegations." Flakes, 153 P.3d at 431. But direct filing is authorized only when a district attorney charges a juvenile with committing an offense enumerated in the direct file statute.

 D. The Direct Filing in This Case

 ¶ 18 The prosecution sought, and the district court consented, to direct file against defendant because he was (1) fourteen years of age or older at the time of the commission of the alleged offense and (2) charged with a felony enumerated as a crime of violence in section 18-1.3-406. § 19-2-517(1)(a)(II)(A). As also relevant here, a crime of violence includes a sexual assault either

 involving a deadly weapon or resulting in serious bodily injury or death, § 18-1.3-406(2)(a)(I) and (II)(E); or

 in which the victim was less than fifteen years old, §§ 181.3-406(2)(b) and 18-3-411(1), C.R.S. 2015.

 ¶ 19 On appeal, the parties agree, as do we, that neither of the charged offenses qualified as a crime of violence. This is because defendant’s conduct did not involve a deadly weapon or cause serious bodily injury or death and the victim had turned fifteen prior to the charged conduct. Therefore, although the parties and the trial court proceeded through both trials and sentencing on the misunderstanding that count one alleged a crime of violence, neither count qualified for direct filing in the district court. E. The Dispute in This Appeal

 ¶ 20 Defendant argues several points:

 The Denver Juvenile Court had exclusive original jurisdiction over this case.

 The charged offenses were not eligible for direct filing.

 The Denver District Court therefore never acquired subject matter jurisdiction over this case because its subject matter jurisdiction could not be invoked under the direct file statute.

 Although defendant did not properly raise the issue in the Denver District Court, subject matter jurisdiction objections are not waivable and may be raised at any time.

 The Denver District court’s actions, taken without subject matter jurisdiction, are a nullity.

 As a result, the conviction must be vacated and the case dismissed.

 ¶ 21 The People’s sole disagreement focuses on defendant’s characterization of the Denver District Court’s jurisdiction as subject matter jurisdiction. They emphasize primarily that the Colorado Constitution grants the Denver District Court original jurisdiction in all criminal cases and that the General Assembly may not restrict that grant of jurisdiction. The People also assert that the Denver District Court’s general jurisdiction over civil cases extends to this case. Finally, they contend that the issue in this case involves the Denver District Court’s personal jurisdiction over defendant. Because defendant did not raise the issue in the Denver District Court and personal jurisdiction is waivable, the People argue he may not raise it for the first time on appeal.

 ¶ 22 Thus, the case turns on two questions: (1) whether the statutory grant of exclusive original jurisdiction to the Denver Juvenile Court improperly infringes on the Denver District Court’s constitutional jurisdiction and (2) whether the Denver District Court’s exercise of jurisdiction over this case was merely personal and therefore waivable.

 F. The Denver Juvenile Court’s Exclusive Jurisdiction Over Delinquency Cases Does Not Infringe on the Denver District Court’s Constitutional Jurisdiction

 ¶ 23 We first examine the relationship between the Denver Juvenile Court’s jurisdiction over delinquency cases and the Denver District Court’s jurisdiction over criminal cases. We then turn to the same issue in the context of the Denver District Court’s jurisdiction over civil cases.

 1. Delinquency Cases Versus Criminal Cases

 ¶ 24 Understanding the relationship between the jurisdiction of the Denver Juvenile Court over delinquency cases and that of the Denver District Court requires an examination of the historical evolution of these courts’ jurisdiction.

 ¶ 25 Colorado was a pioneer in creating a juvenile justice system. Flakes, 153 P.3d at 432. Before the 1960s, the county courts possessed jurisdiction over all cases involving "delinquent children" — children sixteen years of age or younger who violated any state or municipal law, see Ch. 85, secs. 1 and 2, 1903 Colo. Sess. Laws 178-79 — except in Denver, where a separate juvenile court possessed original jurisdiction in all criminal cases involving a child or minor. Ch. 149, secs. 1 and 2, 1907 Colo. Sess. Laws 325. The Denver Juvenile Court’s jurisdiction was made "concurrent with [that of] the district court in any criminal case against a minor." Sec. 19, 1907 Colo. Sess. Laws at 331. At that time, district courts enjoyed original jurisdiction "of all causes, both at law and in equity." Colo. Const. art. VI, § 11 (repealed 1961). The first direct file statute was passed in 1923 and provided that the act giving the juvenile court jurisdiction over juveniles did "not apply to crimes of violence punishable by death or imprisonment for life where the accused is over sixteen years of age." Ch. 75, sec. 1, 1923 Colo. Sess. Laws 197-98.

 ¶ 26 This framework changed when Colorado voters adopted a referred constitutional amendment overhauling article VI, which governs the judiciary, effective in January 1965. Ch. 313, sec. 1, 1963 Colo. Sess. Laws 1048-56. Sections 9 and 15 of this new article vested the district courts with original jurisdiction in "all civil, probate, and criminal cases," id. at 1050, and the Denver Juvenile Court only with "such jurisdiction as shall be provided by law." Id. at 1052.

 ¶ 27 In 1964, the General Assembly adopted implementing legislation providing for the Denver Juvenile Court’s jurisdiction. Specifically, it gave the Denver Juvenile Court "exclusive original jurisdiction in . . . proceedings concerning any child alleged to have violated or attempted to violate any state law or municipal ordinance, . . . except as provided in subsections (2) and (3) of this section, prior to having become eighteen years of age." Ch. 46, sec. 3(1)(b), 1964 Colo. Sess. Laws 437. The exception relevant to this discussion was spelled out in subsection (3), which granted the Denver Juvenile Court "exclusive jurisdiction" over cases in which a child under sixteen years of age was charged with a "crime of violence punishable by death or life imprisonment." Sec. 3(3), 1964 Colo. Sess. Laws at 438 (emphasis added).

 ¶ 28 The following year, the supreme court recognized that "it has long been the rule that the Denver Juvenile Court . . . has exclusive jurisdiction, for example, in delinquency and dependency matters." Garcia v. Dist. Court, 157 Colo. 432, 440, 403 P.2d 215, 219 (1965). The court nonetheless held that the General Assembly’s attempted grant of exclusive jurisdiction to the juvenile court over crimes charged against children under sixteen was unconstitutional as conflicting with article VI, section 9’s grant of original jurisdiction to the district court in all criminal cases. Id. at 437-38, 403 P.2d at 218. In so doing, the court explained that it was not possible to save the statute by interpreting the word "exclusive" to mean "concurrent" so that the Denver Juvenile Court would have jurisdiction over crimes committed by children under the age of sixteen. Id. at 435, 403 P.2d at 217.

 ¶ 29 The General Assembly responded in 1967 by rewriting the jurisdictional grant to the juvenile court.3 The new jurisdictional statute gave the Denver Juvenile Court exclusive original jurisdiction in proceedings concerning any delinquent child, defined as a child ten years of age or older but less than eighteen years who violated any federal or state law, other than traffic or game and fish laws. Ch. 443, sec. 1, §§ 22-1-3(3) and (17), 22-1-4(1)(a)-(b), 1967 Colo. Sess. Laws 994-97. Thus, unlike the 1964 statute, the 1967 statute referred to violations of law by children, rather than crimes. The sanctions for such violations, as determined in delinquency proceedings, varied significantly and implemented the Children’s Code’s goals to protect the public, to promote the delinquent child’s welfare, and to assist the child in becoming a responsible and productive member of society. §§ 22-1-2(1), 22-3-12, 22-3-13, 1967 Colo. Sess. Laws at 993-94, 1012-13.

 ¶ 30 The new jurisdictional statute also provided that a child could not be charged with a felony unless (1) the juvenile court certified the child to be held for criminal proceedings in the district court or (2) a child sixteen years of age or older was charged in district court with a crime of violence punishable by death or life imprisonment. § 22-1-4(4)(a)-(b), 1967 Colo. Sess. Laws at 997. The supreme court upheld the constitutionality of this act. People ex rel. Terrell v. Dist. Court, 164 Colo. 437, 443, 435 P.2d 763, 766 (1967); see also People v. Gilliland, 769 P.2d 477, 480 (Colo. 1989) ("[I]t is the constitutional prerogative of the legislature to define crimes . . . .").

 ¶ 31 In Terrell, the court recognized that the General Assembly could remove the Denver District Court’s jurisdiction over criminal cases involving children under the age of sixteen charged with felonies by exercising its "power to create and define crimes" and "within reasonable limits [to] fix the age below which there can be no criminal responsibility." 164 Colo. at 441, 435 P.2d at 765. The court therefore concluded that the Children’s Code

 $$grants the juvenile court exclusive original jurisdiction in delinquency proceedings concerning any such child. But the district court still retains original jurisdiction in all criminal cases. This is so because a delinquency proceeding is not a criminal case.

 Id. at 444, 435 P.2d at 766.

 ¶ 32 The General Assembly amended the Children’s Code several times before the events at issue in this case. Over the years, the list of crimes enumerated for direct filing in district court expanded. See Flakes, 153 P.3d at 432-33. However, the basic statutory allocation of jurisdiction between the district and juvenile courts has remained largely the same: thus, the Denver District Court has jurisdiction over all criminal prosecutions, and the Denver Juvenile Court maintains its exclusive jurisdiction over delinquency proceedings. See id.

 ¶ 33 We discern three salient points from this historical backdrop:

 The Colorado Constitution does not establish the Denver Juvenile Court’s jurisdiction, which is purely statutory. In the absence of statute, the juvenile court has no authority or jurisdiction to hear any cases. The Denver District Court, however, is a constitutional court with its jurisdiction over all criminal cases articulated in article VI, section 9.

 In 1964, the General Assembly attempted to give the Denver Juvenile Court exclusive jurisdiction over criminal cases against children under the age of sixteen. Notwithstanding the Denver Juvenile Court’s exclusive jurisdiction over delinquency proceedings, the supreme court held this effort unconstitutional in Garcia because the Denver Juvenile Court’s jurisdiction over criminal cases thereby conflicted with the Denver District Court’s constitutional jurisdiction over all criminal cases.

 • In 1967, the General Assembly remedied that

 constitutional defect by giving the juvenile courts exclusive jurisdiction over all delinquency cases and leaving the district courts with jurisdiction in all criminal cases. The supreme court upheld this allocation as constitutional in Terrell, and it remains the statutory jurisdictional allocation to the present day.

 ¶ 34 We therefore conclude that the Denver Juvenile Court’s exclusive jurisdiction over delinquency proceedings does not infringe upon or conflict with the Denver District Court’s jurisdiction over criminal cases.

 2. Delinquency Cases Versus Civil Cases

 ¶ 35 The People also contend that even if the Denver Juvenile Court’s exclusive jurisdiction over delinquency cases does not infringe on the Denver District Court’s original jurisdiction over criminal cases, it nonetheless infringes on the district court’s jurisdiction over civil cases. We are not persuaded.

 ¶ 36 As an initial matter, the People have cited no authority in support of this proposition. We have located no reported Colorado cases holding that delinquency cases are civil cases for purposes of article VI, section 9 of the Colorado Constitution. The proposition conflicts with the supreme court’s holding in Terrell that the juvenile court has exclusive original jurisdiction over delinquency proceedings. 164 Colo. at 444, 435 P.2d at 766; see People v. Juvenile Court, 915 P.2d 1274, 1276 (Colo. 1996); Garcia, 157 Colo. at 440, 430 P.2d at 440. That holding has not been overturned, and the General Assembly has not disturbed the supreme court’s statutory construction despite numerous amendments to the Children’s Code since 1967.4 "The General Assembly is presumed cognizant of relevant judicial precedent when it enacts legislation in a particular area. And, when a statute is amended, the judicial construction previously placed upon that statute is deemed approved by the General Assembly to the extent the provision remains unchanged." U.S. Fid. & Guar., Inc. v. Kourlis, 868 P.2d 1158, 1162-63 (Colo. App. 1994). We thus view the General Assembly’s inaction as tacit approval of the supreme court’s construction of the predecessor to section 19-2-104 in Terrell. See id.; see also Spanish Peaks Mental Health Ctr. v. Huffaker, 928 P.2d 741, 744 (Colo. App. 1996) (Where the General Assembly revisited a statute several times after the previous decisions without changing the language at issue, the previous decisions’ judicial construction "is deemed to be approved by the General Assembly.").

 ¶ 37 We nonetheless recognize that the supreme court has noted that delinquency proceedings are "civil in nature," Bostelman, 162 P.3d at 691; A.C. v. People, 16 P.3d 240, 242 (Colo. 2001), or "civil in character," S.G.W. v. People, 752 P.2d 86, 88 (Colo. 1988); S.A.S. v. Dist. Court, 623 P.2d 58, 60 (Colo. 1981). The reasons given by the supreme court for such characterizations include the General Assembly’s desire to protect juveniles from the stigma associated with criminal proceedings, S.G.W., 752 P.2d at 88, the "unique nature" of delinquency proceedings, A.C., 16 P.3d at 242, and the primary design of the juvenile justice system for guidance, rehabilitative, and restorative purposes, as well as the protection of society, Bostelman, 162 P.3d at 691.

 ¶ 38 The supreme court has warned, however, that "[l]ittle . . . is to be gained by any attempt simplistically to call the juvenile court proceeding either ‘civil’ or ‘criminal.’" People in Interest of T.M., 742 P.2d 905, 908 (Colo. 1987) (quoting McKeiver v. Pennsylvania, 403 U.S. 528, 541 (1971)). Both the United States and Colorado Supreme Courts have "avoided this wooden approach." Id. (quoting McKeiver, 403 U.S. at 541). Our supreme court has emphasized that notwithstanding "the technical classification of a juvenile [delinquency] proceeding as ‘civil,’" those proceedings share important characteristics of a criminal prosecution, such as the juvenile being (1) placed at risk of incarceration or other loss of liberty; and (2) entitled to due process guarantees of fundamental fairness, such as proof beyond a reasonable doubt and the right to a speedy trial. P.V. v. Dist. Court, 199 Colo. 357, 359-60, 609 P.2d 110, 111 (1980) (quoting People in Interest of R.A.D., 196 Colo. 430, 433, 586 P.2d 46, 48 (1978)).

 ¶ 39 Consistent with this approach, we conclude that delinquency proceedings are unique and cannot be pigeon-holed into a technical or simplistic classification like "civil" or "criminal" for jurisdictional purposes. Another division of this court has explained that "[a] civil action is a judicial proceeding to enforce a private right." Aviado v. Indus. Claim Appeals Office, 228 P.3d 177, 180 (Colo. App. 2009). The present case was not brought by the victim for damages to enforce her private right not to be sexually assaulted, but rather by the State "to protect, restore, and improve the public safety" while taking into consideration "the best interests of the juvenile, the victim, and the community." § 19-2-102(1). Therefore, it does not fit within the civil case mold.

 ¶ 40 However, even if this case could be classified as a civil case for purposes of article VI, section 9, the General Assembly has the power to limit district courts’ subject matter jurisdiction if such limitations are explicit. Wood v. People, 255 P.3d 1136, 1140 (Colo. 2011); In re A.W., 637 P.2d 366, 374 (Colo. 1981); People v. Morley, 77 Colo. 25, 29, 234 P. 178, 179 (1924); Marks v. Gessler, 2013 COA 115, ¶ 71 (cert. granted on other grounds June 23, 2014). Thus, just as the General Assembly has the power to define "crimes," it also has the power to define the term "civil case." Aviado, 228 P.3d at 180 (citing Gilliland, 769 P.2d at 480; Terrell, 164 Colo. at 443, 435 P.2d at 766). The division in Aviado concluded that "the General Assembly essentially has determined that workers’ compensation cases are not civil cases that must be heard in a judicial court" by establishing an administrative system for resolving such cases. Id. at 180-81.

 ¶ 41 Similarly, the General Assembly specifically spelled out that the Denver Juvenile Court has exclusive original jurisdiction over delinquency proceedings. In so doing, it placed a narrow but explicit limitation on the Denver District Court’s jurisdiction over civil cases as well as criminal cases by carving out delinquency cases.

  

 ¶ 42 For these reasons, we conclude that the Denver Juvenile Court’s exclusive jurisdiction over delinquency proceedings does not infringe on or conflict with the Denver District Court’s original jurisdiction over civil and criminal cases.

 G. Subject Matter Jurisdiction Versus Personal Jurisdiction

 ¶ 43 The People do not dispute that the conduct at issue falls within the Denver Juvenile Court’s jurisdiction, since neither charged offense was enumerated under section 19-2-517. They contend, however, that the jurisdictional defect in the case is merely a question of personal jurisdiction and that defendant waived this jurisdictional defense by failing to assert in Denver District Court that the first count was not an enumerated offense. We disagree.

 ¶ 44 According to the People, the legislature’s grant to the Denver Juvenile Court of "exclusive original jurisdiction" over delinquency proceedings must mean personal jurisdiction, even though the Children’s Code does not so specify. They urge this conclusion because otherwise the juvenile court’s jurisdiction would impermissibly impinge on the district court’s constitutional jurisdiction over all criminal cases.

 ¶ 45 To resolve this issue, we first distinguish between subject matter and personal jurisdiction. "Subject matter jurisdiction concerns a court’s authority to deal with the class of cases in which it renders judgment." Wood, 255 P.3d at 1140; People in Interest of Clinton, 762 P.2d 1381, 1387 (Colo. 1988). More specifically, a court possesses subject matter jurisdiction "where it has been empowered to entertain the type of case before it by the sovereign from which the court derives its authority." Wood, 255 P.3d at 1140; see also Gilliland, 769 P.2d at 480 ("Subject matter jurisdiction relates to a court’s authority to hear and determine the particular type of case before it.").

 ¶ 46 By contrast, personal jurisdiction involves a court’s authority over a particular individual. Currier v. Sutherland, 218 P.3d 709, 714 (Colo. 2009); see also People v. Corrales-Castro, 2015 COA 34M, ¶ 30 (cert. granted Sept. 8, 2015). "The physical presence of the defendant in court confers jurisdiction over the person." People v. Garcia, 2013 COA 15, ¶ 15 (citing Bell v. Bower, 199 Colo. 195, 196, 606 P.2d 74, 74 (1980)).

 ¶ 47 Of particular relevance here, a court’s lack of subject matter jurisdiction may not be waived and can be raised at any time in a proceeding, including for the first time on appeal. Currier, 218 P.3d at 714; Herr v. People, 198 P.3d 108, 111 (Colo. 2008); Clinton, 762 P.2d at 1388 n.3; Corrales-Castro, ¶ 31; Long v. Cordain, 2014 COA 177, ¶ 10; see also C.R.J.P. 3.2(c) ("Lack of jurisdiction shall be noticed by the court at any time during the proceedings."). Action taken by a court when it lacks subject matter jurisdiction is a nullity. People v. Dillon, 655 P.2d 841, 844 (Colo. 1982); People in Interest of P.K., 2015 COA 121, ¶ 9; People v. Rivera-Bottzeck, 119 P.3d 546, 551 (Colo. App. 2004); People v. Torkelson, 971 P.2d 660, 661 (Colo. App. 1998). Lack of subject matter jurisdiction also requires dismissal. Long, ¶ 10; see also People ex rel. Rodello v. Dist. Court, 164 Colo. 530, 537, 436 P.2d 672, 676 (1968) (ordering the district court to dismiss the action based on a defective direct filing); Terrell, 164 Colo. at 445-46, 435 P.2d at 767 (same).

 ¶ 48 The defense of lack of personal jurisdiction over the defendant, however, may be waived if not timely raised in the trial court. Currier, 218 P.3d at 714; Clinton, 762 P.2d at 1388 n.3; Corrales-Castro, ¶ 31; 14 Robert J. Dieter & Nancy J. Lichtenstein, Colorado Criminal Practice and Procedure § 2.90 (2d ed. 2014).

 ¶ 49 We conclude that the subject matter jurisdiction of the Denver District Court, rather than its personal jurisdiction over a particular individual, is at issue here for several reasons.

 ¶ 50 First, the Denver Juvenile Court is a creature of statute; it has no authority to act in any case except as provided by statute. Colo. Const. art. VI, § 15. The General Assembly by statute has granted the Denver Juvenile Court "exclusive original jurisdiction" over several types of cases, including particularly delinquency proceedings involving juveniles who have violated a state law. §§ 19-1-104(1)(a), 19-2-104(1)(a)(I), C.R.S. 2015. Without such statutory authority, the Denver Juvenile Court would lack jurisdiction to preside over any class of cases. Accordingly, this statutory grant of jurisdiction establishes the Denver Juvenile Court’s jurisdiction over the subject matter of delinquency proceedings, not over a particular person.

 ¶ 51 Second, the People’s contention that a juvenile may waive the Denver Juvenile Court’s jurisdiction and be tried instead in Denver District Court assumes that the two courts possess concurrent jurisdiction over delinquency cases. The plain language just discussed that the Denver Juvenile Court has exclusive original jurisdiction in proceedings in which a juvenile has violated a state law makes that assumption untenable. Fifty years ago the People argued that the word "exclusive" should be construed to mean "concurrent" in the context of the Denver Juvenile Court. The supreme court was not persuaded: "In our considered view, to interpret the word ‘exclusive’ to mean ‘concurrent’ would be improper. Such would seem to be rather obvious ‘judicial legislation’ . . . ." Garcia, 157 Colo. at 435, 403 P.2d at 217.

 ¶ 52 Third, the Denver Juvenile Court has not been given authority over criminal cases. See Juvenile Court, 915 P.2d at 1277-78; Terrell, 164 Colo. at 444, 435 P.2d at 766. Since the Denver Juvenile Court has no jurisdiction over criminal cases and the Denver District Court has no jurisdiction over delinquency cases, there is no conflict giving rise to a constitutional concern. See Juvenile Court, 915 P.2d at 1278. Thus, the conflict that the People rely on to support an alleged need to characterize the Denver District Court’s jurisdiction as personal does not exist.

 ¶ 53 Fourth, as discussed above, the Denver District Court’s jurisdiction over direct file cases against juveniles constitutes subject matter jurisdiction, and the Denver District Court lacks subject matter jurisdiction over cases involving juveniles who have committed delinquent acts. The district attorney, however, may invoke a district court’s subject matter jurisdiction over enumerated types of cases under the direct file statute. Because direct file cases charge crimes, as opposed to delinquent acts, the enumerated crimes constitute a class or type of criminal cases and thus fall within the district courts’ subject matter jurisdiction. See Wood, 255 P.3d at 1140; Gilliland, 769 P.2d at 480. Subject matter jurisdiction, however, must be properly invoked before the Denver District Court can act, and a judgment rendered without proper invocation of subject matter jurisdiction is void. In re Support of E.K., 2013 COA 99, ¶ 8; Adams Cty. Dep’t of Soc. Servs. Child Support Enf’t Unit v. Huynh, 883 P.2d 573, 574 (Colo. App. 1994). When the Denver District Court’s jurisdiction over a case under the direct file statute has not been properly invoked, the subject matter of the case remains within the exclusive jurisdiction of the Denver Juvenile Court to adjudicate delinquency proceedings.

 ¶ 54 Fifth, this is not a case where the Denver District Court lacked jurisdiction over defendant’s person — there is no dispute that he was brought before the court. Rather, the jurisdictional defect arises from the type of case in which jurisdiction was asserted. See Currier, 218 P.3d at 714; Garcia, ¶ 15. Nor is this a case involving a defective information. Defendant does not challenge the sufficiency of the information; he challenges the jurisdiction of the Denver District Court to entertain it.

 ¶ 55 Finally, the People have cited no authority for the proposition that the Denver District Court’s lack of jurisdiction over a direct file case charging only nonenumerated offenses is a question of personal — rather than subject matter — jurisdiction, and we have found none.

 ¶ 56 Accordingly, we conclude that the Denver Juvenile Court’s authority to entertain defendant’s case and the Denver District Court’s lack of authority to do so is not a question of personal jurisdiction. As a result, defendant could not and did not waive his right to object to the Denver District Court’s defective subject matter jurisdiction.

 ¶ 57 We therefore hold that (1) the Denver Juvenile Court had exclusive jurisdiction over the charge on which defendant was tried, convicted, and sentenced in the Denver District Court; (2) the Denver District Court accordingly lacked subject matter jurisdiction over that case; and (3) the Denver District Court’s judgment is therefore a nullity and must be vacated.

 IV. Conclusion

 ¶ 58 The Denver District Court’s judgment of conviction and sentence are vacated, and the matter is remanded to the district court to dismiss the case.

 JUDGE HAWTHORNE and JUDGE BERNARD concur.

  

  

  

 [1] Although Mr. Sandoval was a juvenile at the time of the offense, because of the peculiar posture of this case, we refer to him as defendant, rather than by his initials.

 [2] The Children’s Code contains two jurisdictional provisions. The section quoted in the text (section 19-2-104, C.R.S. 2015) appears in the juvenile justice article and addresses only delinquency proceedings. Section 19-1-104, C.R.S. 2015, also addresses the juvenile court’s jurisdiction in delinquency cases as well as in proceedings related to dependency and neglect, custody and support, adoption, and numerous other matters. As relevant here, section 19-1-104(1)(a) gives the juvenile court, except as otherwise provided by law, "exclusive original jurisdiction in proceedings . . . [c]oncerning any child committing a delinquent act." A "child" is defined as a person under eighteen, and a "delinquent act" includes a violation of any statute enumerated in section 19-2-104(1)(a). § 19-1-103(18), (36), C.R.S. 2015. Thus, for purposes of this case, the jurisdictional reach of the two sections over delinquency proceedings is essentially identical.

 [3] This jurisdictional statute applied to both the Denver Juvenile Court and the juvenile division of the district courts in other judicial districts. Ch. 443, sec. 1, § 22-1-3(2), 1967 Colo. Sess. Laws 994. Our discussion, however, focuses only on the Denver Juvenile Court.

 [4] For example, the entire Children’s Code was repealed and reenacted in 1987, Ch. 138, sec. 1, §§ 19-1-101 to 19-6-105, 1987 Colo. Sess. Laws 695-812, and article two of the Code on the juvenile justice system was again repealed and reenacted in 1996, Ch. 283, sec. 1, §§ 19-2-101 to 19-2-1004, 1996 Colo. Sess. Laws 1595-1679. Since then, sections 19-1-104(1)(a) and 19-2-104(1)(a) have been amended seven additional times in total, and none of the reenactments or amendments has changed the grant to the juvenile court of its exclusive original jurisdiction over delinquency proceedings.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || April 21, 2016

Back