25CA0543 Strumpf v Department of Corrections 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0543
State Personnel Board No. 2024B84

---

Eric Strumpf,

Complainant-Appellant,

v.

Department of Corrections,

Respondent-Appellee,

and

State Personnel Board,

Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Eric Strumpf, Pro Se

Philip J. Weiser, Attorney General, Michael J. Bishop, Assistant Attorney General, Dominick D. Schumacher, Assistant Attorney General, Denver, Colorado, for Respondent-Appellee

Philip J. Weiser, Attorney General, Jenna H. Anderson, Senior Assistant Attorney General, Denver, Colorado, for Appellee

¶ 1　　Complainant, Eric Strumpf, appeals from an order of the State Personnel Board (Board) affirming the initial decision of an administrative law judge (ALJ).  Strumpf contends that the Board erred by excluding the transcripts of the evidentiary hearing before the ALJ and that, without those transcripts, the Board failed to conduct a meaningful review of the ALJ's finding that respondent, the Department of Corrections (Department), did not terminate his employment in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12134, the Colorado Anti-Discrimination Act, § 24-34-402, C.R.S. 2025, or the Rehabilitation Act of 1973, 29 U.S.C. § 794.  We agree.  Accordingly, we reverse the Board's order and remand the case to the Board with directions to consider the transcripts when reviewing Strumpf's appeal of the ALJ's decision.

## I.　　Background

¶ 2　　Strumpf, who served as the Department's Budget and Business Operations Director from June 2022 to May 2024, alerted his employer in September 2023 that he was suffering from major depression.  He requested emergency sick leave on November 13,

1

2023, and remained out of work until May 17, 2024, when he was administratively discharged.

¶ 3     Strumpf appealed his administrative discharge, arguing, as relevant here, that the Department violated the ADA by failing to engage in an interactive process with him to determine an appropriate reasonable accommodation for his disability. *See Ward v. Dep't of Nat. Res.*, 216 P.3d 84, 94 (Colo. App. 2008) (detailing the obligations of employers subject to the ADA). In September 2024, he participated in a two-day evidentiary hearing before an ALJ. Following the hearing, the ALJ issued an initial decision finding that the Department did not violate the ADA because Strumpf never requested an accommodation.

¶ 4     Attached to the initial decision was a document titled "Notice of Appeal Rights" that explained the process for appealing the initial decision to the Board. This document stated,

> Any party wishing to have a transcript made part of the record is responsible for having the transcript prepared. To be certified as part of the record, an original transcript must be prepared by a disinterested, recognized transcriber and filed with the Board within 59 days of the date of the designation of record. See Board Rule 8-53(A)(5)-(7). For additional information contact the State Personnel Board

office at [phone number] or email at [email address].

¶ 5 Strumpf requested and received the audio recordings of the evidentiary hearing and then sent a query to the provided email address:

> I'm confused as to what company to use for the transcription. . . .  Can you clarify who I should contact to transcribe these files please?

A Board representative responded:

> With regards to Transcripts, pursuant to Board rules the requesting party *may use a certified transcription service of your choice.*

Strumpf had the audio recordings transcribed by a company called Ditto, which advertises itself as providing certified transcription services, and he submitted the transcripts with his request for Board review of the ALJ's initial decision.

¶ 6 The Department then moved to exclude Strumpf's transcripts, arguing that they were not prepared by a "court reporter," in violation of Department of Personnel and Administration Rule 8-53(A)(5), (7), 4 Code Colo. Regs. 801-1 (requiring transcripts to be prepared by a "court reporter") (hereinafter Board Rule 8-53(A)).  To define the term "court reporter," the Department referred to

attached screenshots from Ditto's website explaining "the difference between court reporting vs. legal transcription." In the screenshots, Ditto explained that "[c]ourt reporters (also called stenographers, shorthand reporters, or law reporters) are in the courtroom to provide real-time court reporting," while legal transcriptionists convert "[l]egal recordings . . . into verbatim transcription."

¶ 7 The Board granted the Department's motion and excluded the transcripts, noting that they "do not comply with the Board Rules" because they were not prepared by a "court reporter." After declining to consider the transcripts, the Board issued a brief order:

> Based upon the Board's review and consideration, and by an affirmative vote of the Board members, IT IS HEREBY ORDERED that the Initial Decision of the Administrative Law Judge is AFFIRMED.

¶ 8 Strumpf now appeals.

## II.    Analysis

¶ 9 Strumpf contends that the Board erred by excluding the transcripts from the record for its consideration. We agree.

¶ 10 Strumpf also raises several other contentions, which can be distilled to allegations that he had communications with the Department that should have prompted the ADA interactive

4

process. Because these contentions likely depend on or are informed by the testimony presented at the evidentiary hearing, we address only whether the Board erred by excluding the transcripts.

## A. Standard of Review

¶ 11 "We may reverse the decision of an administrative agency if we conclude 'the agency acted arbitrarily or capriciously, made a decision that is unsupported by the record, erroneously interpreted the law, or exceeded its authority.'" *Ward*, 216 P.3d at 91 (quoting *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001)). "All reasonable doubts as to the correctness of the administrative body's ruling must be resolved in its favor, and the administrative determination will not be disturbed absent an abuse of discretion." *Id.*

## B. Law and Discussion

¶ 12 "Agencies that have quasi-judicial functions . . . are required by procedural due process principles to give notice of their procedures to affected individuals." *Lobato v. Indus. Claim Appeals Off.*, 105 P.3d 220, 228 (Colo. 2005). Under these circumstances, where Strumpf complied with the directions in the "Notice of Appeal Rights" and the additional instructions he sought and received from

5

a Board representative, the Board's decision to exclude the transcripts constitutes an abuse of discretion.

¶ 13     Department of Personnel and Administration Rule 8-37(G), 4 Code Colo. Regs. 801-1 (hereinafter Board Rule 8-37(G)), which establishes the procedures for evidentiary hearings before an ALJ, states that "[t]he [ALJ] will record the proceedings by an electronic recording device." Board Rule 8-53(A)(5), in turn, requires that "[a]ny party who designates a transcript as part of the record shall arrange for preparation of the transcript directly with a neutral and certified court reporter." Board Rule 8-53(A)(7) likewise requires that "[a]ny transcript to be included as part of the record shall be signed and certified by the court reporter who prepared the transcript." But although the "Notice of Appeal Rights" cited Board Rule 8-53(A)(5)-(7), it characterized the rule as requiring only that transcripts "must be prepared by a disinterested, recognized transcriber." When Strumpf contacted the Board to explicitly ask "who [he] should contact to transcribe" the audio recordings of the hearing, a Board representative told him that he could "*use a certified transcription service of [his] choice.*"

¶ 14    To certify means "[t]o authenticate or verify in writing" and "[t]o attest as being true or as meeting certain criteria." Black's Law Dictionary 284 (12th ed. 2024). Importantly, in its motion to exclude the transcripts, the Department appeared to acknowledge that they are certified. Specifically, it stated that (1) the last page of each transcript "contains a 'Transcriber's Certificate,' bearing the signature" and contact information of the transcriber; and (2) a paralegal from its counsel's office spoke to a Ditto representative, who explained that Ditto's legal transcriptionists are not court reporters but that "the transcript is certified." The Department also attached to its motion ten screenshots from Ditto's website that include the header, "Certified Court Transcription Services." It further attached a screenshot that explains, "We do certify our transcripts . . . . What that means is that we certify and will testify in court to its authenticity and accuracy if needed."

¶ 15    In arguing that Strumpf failed to comply with the Board rule requiring transcripts to be prepared by a "court reporter," the Department referred to the definition of "court reporter" in the attached screenshot from Ditto's website: "Court reporters (also called stenographers, shorthand reporters, or law reporters) are in

7

the courtroom to provide real-time court reporting." The Department thus appeared to interpret Board Rule 8-53(A)(5) and (7) as requiring that proceedings be transcribed in real time in order to be included as part of the record. Under that interpretation, however, *no* transcription service could have produced an admissible transcript from the audio recordings of the hearing before the ALJ. Interpreting Board Rule 8-53(A)(5) and (7) as requiring real-time transcription cannot be squared with Board Rule 8-37(G), which requires the ALJ to "record the proceedings by an electronic recording device," or with the statement by the Board representative that Strumpf could have the audio recordings transcribed by a certified transcription service of his choice.

¶ 16    On appeal, the Department does not provide a definition of the term "court reporter." But it argues that the Board fairly applied Board Rule 8-53(A)(5) and (7) to exclude the transcripts in this case because the rule is "consistent with" the statement in Chief Justice Directive 05-03, Management Plan for Court Reporting and Recording Services, p. 1 (amended July 2023), that "[t]he preferred method of making an accurate record of court proceedings is with the assistance of a realtime certified court reporter." To the extent

the Department is arguing on appeal that Board Rule 8-53(A)(5) and (7) requires real-time transcription, however, the Department does not explain how enforcing that rule *after* the ALJ conducted an audio-recorded hearing under Board Rule 8-37(G) could comport with procedural due process.

¶ 17　We further note that the next sentence of the Chief Justice Directive states: "In the absence of a court reporter, digital electronic sound recording equipment can record proceedings." *Id.*

¶ 18　We thus conclude that, under the circumstances of this case, where Strumpf followed all the instructions he received from the Board regarding the preparation of transcripts, the Board abused its discretion by excluding the transcripts.

## C.　The Error Is Not Harmless

¶ 19　"The harmless error rule applies to judicial review of administrative proceedings, and errors in such administrative proceedings will not require reversal" absent a showing of prejudice. *Sheep Mountain All. v. Bd. of Cnty. Comm'rs*, 271 P.3d 597, 606 (Colo. App. 2011) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)); *see* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the

proceeding which does not affect the substantial rights of the parties.").

¶ 20    The ALJ found that the Department did not violate the ADA because Strumpf never asked for an accommodation.[1]  Strumpf does not contest the absence of an explicit request.  But, as best we can understand his contentions, he argues that the ALJ disregarded hearing testimony by the Department's ADA Coordinator that there were "four communications" by Strumpf about his disability that should have triggered the ADA interactive process.  *See Ward*, 216 P.3d at 95 ("To trigger the interactive process, no magic words are necessary.").  Without the hearing transcripts, the Board could not evaluate this claim, and neither can we.

---

[1] The ALJ relied on a video recording of a meeting between Strumpf and Department staff members, including the Department's ADA Coordinator, during which Strumpf said that he had "never asked for an accommodation."  However, during that meeting Strumpf also explained his view that "it isn't an accommodation for the Department to do the right thing."  He then asked the ADA Coordinator if she thought he could frame his needs in terms of an accommodation: "What accommodation, if any, that I'm failing to ask for, do you think maybe I should be asking for?"  The ADA Coordinator did not respond.

## III. Disposition

¶ 21   We reverse the Board's order and remand the case to the Board with directions to consider the transcripts when deciding Strumpf's appeal of the ALJ's decision.

JUDGE GROVE and JUDGE SCHOCK concur.